STATE, ex rel. C. J. ROOT v. C. H. CRANDON, et al.

155 So. 667.

Division B.

Opinion Filed May 29, 1934.

*Jennings & Watts,* for Plaintiff in Error;

*Hudson & Cason* and *Rudolph Isom,* for Defendants in Error.

WHITFIELD, P. J.—This writ of error was taken to a final judgment dismissing an action in mandamus which sought to require payment to the relator bond holder the money of the Biscayne Drainage District now in the bond fund of the district, the defense being that the bonds were issued under Sections 2785 (1734), *et seq.,* C. G. L., which provide for paying the bonds only with the proceeds of special assessments; and as such special assessments cannot supply sufficient funds to pay all the bonds, the payments should be

made ratably upon all the bonds and not to the relator to the exclusion of the bond holders. The bonds issued by the district were validated by a decree of the circuit court in proceedings had under the statute for validating bonds of governmental units. Section 5106 (3296), C. G. L. If the statute did not authorize the district to issue bonds containing an unconditional promise to pay but limited the authority to issue bonds to be payable only from special assessments on lands in the district, an apparent unconditional promise contained in the bonds is restrained by the provisions of the statute which become a part of each bond, and a validating decree has reference to the limitations of the statute under which the district bonds were issued.

A judicial decree may adjudicate the validity of district bonds within the limitations of the provisions of the statute authorizing the bonds to be issued, but a decree cannot enlarge the statutory authority conferred any more than it could confer authority to issue district bonds. Judicial power may adjudge the validity of district bonds within the statutory limitations authorizing the bonds; but a judicial decree cannot give validity to district bonds issued without, or in excess of, statutory authority; and a decree adjudging the validity of district bonds, as well as the provisions of the bonds, should be interpreted according to the provisions of the authorizing statute.

The statute confers special powers upon the district, and its provisions give no implied authority to the district to issue general obligation bonds.

A statute may validate bonds of a drainage district if a statute could have authorized the bonds when issued and no organic limitation has intervened, since authority to issue such bonds is derived only from statutes, and legislative authority may be conferred by duly confirming bond issues

as well as by authorizing them. The courts have no power to confer authority to issue such bonds, and can only validate such bonds when they were issued under competent legislative authority.

Judicial validation decrees cannot confer authority to issue bonds when such authority has not been conferred by the Constitution or the statute of the State. Where bonds are issued by a drainage district under Division 1, Title IX, Chapter XXI, Sections 2785 (1734), *et seq.*, C. G. L., the statute becomes a part of and a limitation upon, the provisions of the bonds; and the terms of the bonds so issued are to be interpreted in connection with the authority conferred by the statute. If the statutes governing the district confer only power to issue bonds payable from the proceeds of special assessments, any bonds issued by such district are payable only from the proceeds of special assessments as authorized by the statutes, even though the bonds severally state on their face that they "are issued in conformity with the laws of the State," and that "the full faith, credit and resources of the * * * district are hereby pledged for the punctual payment of the principal and interest of this bond;" and even though the statute, Section 2797 (1746); C. G. L., enacts that "bonds issued under this chapter shall be a lien upon the lands embraced within such drainage district, and such lien shall be prior in dignity to all others except taxes." The statutory provision contained in the quotation last above has relation to the liens of the special assessments provided for in the Act, and do not authorize the levy of taxes or the levy of any special assessments except those stated in the Act.

Counties and municipalities may have general powers of taxation conferred by statute; but drainage districts do not have general taxing powers under present statutes.

Under the statute the bonds are not general obligations of the district, and the validating decree is to be read with reference to the statute authorizing the bonds, the provisions of the statute being a part of the bonds.

*Bona fide* holders of bonds are bound by the limitations contained in the statute under which the bonds were issued, and the statute controls even if the bonds are broader in their terms than the statute authorizes; and a validating decree is limited by the terms of the statute under which the validated bonds were issued. Recitals in bonds cannot confer authority not given by the statute. In Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 70 A. L. R. 156, and like cases, the statute expressly required a tax levy to pay special assessment bonds. See Whitney v. Hillsborough Co., 99 Fla. 628, 127 So. 486.

The provision of Section 2792 (1741), C. G. L., that the board of county commissioners shall, in issuing and selling bonds and in disbursing the proceeds thereof, act in substantial conformity with the provisions of law applicable to the issue and sale of bonds for the purpose of constructing hard-surfaced highways or public buildings, does not add to the authority to make special assessments contained in the statute.

Section 2792 (1741), C. G. L., also provides that:

"In no case shall district bonds be issued or sold against any drainage district for a greater amount than the assessment imposed upon the lands in such district."

This is a limitation upon the authority to levy special assessments, and the statute confers no general power to levy assessments and no power to levy ad valorem taxes.

Affirmed.

BROWN and BUFORD, J. J., concur.

Davis, C. J., and Terrell, J., concur in the opinion and judgment.

Davis, C. J. (concurring).—I think the language of the bonds: "The full faith, credit and resources of the said Biscayne Drainage District are hereby pledged for the punctual payment of the principal and interest of this bond" means nothing more in contemplation of law than that there has been pledged the full faith, credit and resources of Biscayne Drainage District to the extent limited and found in the particular statutes under which the Biscayne Drainage District was organized, exists and was authorized to issue bonds at all. When the bonds were validated by judicial decree the decree should be interpreted as having intended to give no greater obligation than the statute and the bonds of their face contemplated. No general taxing power has ever been given drainage districts so none could have been pledged or otherwise obligated by operation of law.

The Florida statute, unlike the Washington statute dealt with by the United States Supreme Court in Roberts v. Richland Irr. Dist., 53 Sup. Ct. 519, affirming 13 Pac. (2nd) 437, does not undertake to obligate each parcel of land in the district jointly, severally and collectively to meet deficiencies resulting from non-payment of assessments imposed on other lands in the same district.