HALIFAX DRAINAGE DISTRICT OF VOLUSIA COUNTY v. THE STATE OF FLORIDA, and the several property owners, taxpayers, citizens and others having or claiming any right, title or interest in the said Halifax Drainage District of Volusia County, or the taxable property, therein, *et al.*

185 So. 123.

En Banc.

Opinion Filed June 10, 1938.

Opinion on Rehearing Filed July 23, 1938.

Opinion on Second Rehearing Filed October 2, 1938.

Extraordinary Petition for Rehearing Denied October 20, 1938.

472

*Joseph E. Hendricks* and *Casey, Walton* and *Spain,* for Appellant;

*W. J. Gardiner,* for Appellees;

*Giles J. Patterson,* as *Amicus Curiae.*

CHAPMAN, J.—The parties to this cause in this opinion will be referred to as they appeared in the lower court as plaintiff and defendants. This case is here on an appeal

from a final decree entered by the Circuit of Volusia County, Florida, dated December 10, 1936, denying validation of refunding drainage bonds, with permission to submit an amended petition alleging the adoption of an amended resolution providing for the issuance of the said refunding bonds. From this decree an appeal was perfected and the cause is here for review on several assignments of error.

The record shows the Halifax Drainage District of Volusia County, Florida, was incorporated October 7, 1916, for a period of 99 years, by a Circuit Court decree rendered under authority of Chapter 6458, Laws of Florida, General Acts of 1913. By resolution May 16, 1921, the District authorized a bond issue totalling $177,500.00. Another resolution, adopted the same day, provided that the bonds should pledge the full faith, credit and resources of the District for their payment. These proceedings were validated by Chapter 7968, Laws of Florida, Special Acts of 1919, Chapter 8884, Laws of Florida, Special Acts of 1921, and Chapter 9985, Laws of Florida, Special Acts of 1923. The bonds were issued as authorized, dated June 1, 1921, maturing serially in the years 1925 to 1945, inclusive, $76,000.000 thereof have been paid or otherwise retired. The remainder, representing principal amounting to $101,-500.00, have not been paid, and are still outstanding, but are valid obligations of the District, and may be refunded as provided by law. Interest on the outstanding bonds was paid to June 1, 1930, but interest thereon from that day to June 1, 1935, amounting to $150.00 on each outstanding bond, is past due and unpaid. The Board of Supervisors resolved to issue refunding bonds, for the purpose of refunding the outstanding $101,500.00 of original bonds, and has obtained the consent of a large majority of the bondholders. Pursuant to Chapter 13627, Laws of Florida, General Acts of 1929, and Chapter 15772, Laws of Florida,

General Acts of 1931, a resolution was adopted July 17, 1936, authorizing the issue of $101,500.00 of refunding bonds, in the denomination of $500.00 each, numbered to correspond with the original bonds outstanding, dated June 1, 1935, maturing June 1, 1955, unless sooner called for redemption, bearing interest payable semi-annually, at 2% per annum for the first three years, 3% per annum for the next three years, 4% per annum for the next three years, and 5% per annum thereafter until paid. The refunding bonds will constitute an authorized extension and continuation of the obligation evidenced by the original bonds, which obligation will not be extinguished by, but will be merged in the refunding bonds. The latter may be accepted in payment of delinquent drainage taxes levied by the District for 1934 and prior, but not subsequent years. The refunding bonds shall be exchanged or sold only for the purpose of refunding the original bonds. Before the original bond issue was authorized, the total amount of benefits to accrue to lands within the District by reason of the execution of the plan of reclamation, was assessed at $405,372.08. At the time of authorizing the original bond issue, the District levied a tax of $179,771.04 to pay the cost of the completion of the proposed works and improvements as shown on its second amended plan of reclamation, and in carrying out the object of the District, plus 10% thereof, amounting to $17,977.10, for emergencies, and $167,520.00, as the amount of interest which it was estimated would accrue on the bonds, making a total original levy of $365,268.14. Of this sum, levied by way of annual installments of the total original tax, $161,493.21 has been collected, and $80,708.62 is delinquent.

The material portions of the refunding resolution for consideration adopted by the plaintiff under date of July 17, 1936, are, viz.:

1. All uncollected installments theretofore levied, and all installments thereafter levied, of the original total tax, except such part thereof as is authorized by law to be used for other lawful drainage purposes, are thereby irrevocably pledged for the purpose of purchasing bonds of the District, and of liquidating principal and interest of the refunding bonds, as well as principal and interest of such of the original bonds as may not be refunded.

2. The District will annually levy and assess such installments of the total original tax, as may be required to provide sufficient money for payment of the principal and interest of the refunding bonds, as well as the principal and interest of such of the original bonds as may not be refunded.

3. The District "also will assess and levy in the manner and as provided by law such further and additional taxes as may be necessary and required for the purpose of providing and raising sufficient money with which to pay the principal of the original bonds * * *, and the principal of any refunding bonds issued hereunder, as well as the interest which will accrue upon the said refunding bonds by reason of the extension and continuation of the original obligations in the form of said refunding bonds."

4. The District "will assess and levy annually as authorized by law, beginning not later than" 1940 "a sufficient tax to create and provide a fund to be used for the purpose of purchasing and/or retiring and redeeming the said bonds. That the said tax to be so assessed and levied annually as aforesaid for the purpose creating said sinking fund shall be sufficient to purchase and/or pay and redeem all of the said bonds."

5. Due credit will be given all land owners who have fully paid their proportion of the total original tax, and the same shall be marked fully paid on all annual installment

tax books to be thereafter prepared, but this provision shall not be construed as preventing the District from levying such additional or total installment taxes against the land, as shall be necessary to pay principal and interest of the refunding bonds, after the original total tax shall have been levied against all lands in the District in proportion to the assessed benefits.

6. Any land owner in the District may, within thirty days after adoption of the refunding resolution, pay "the full amount of the uncollected principal or assessment charge-able to his land * * *, and the total tax heretofore levied against his lands by paying * * * all unpaid and delinquent installment taxes, and the 1935 or current taxes * * *, and an additional sum, such additional sum to be the propor-tionate part of" $101,500.00 (the amount of original bonds' outstanding) "that is chargeable against such land owner's lands * * *." The Treasurer of the District shall prepare a schedule "of such additional taxes that may be paid by such land owner * * *, and the amount payable by each said land owner * * * shall be in proportion to the assessed benefits against the lands of such land owner * * *, and upon payment of all unpaid installment taxes, 1935 or current taxes, and the additional tax to be figured and computed as here provided, the lands of any such land owner * * * shall thereupon be released from the levy of subsequent an-nual installment drainage taxes against his lands until the to-tal amount of the original total tax heretofore levied, * * * shall have been exhausted provided, however, that such lands shall be and remain liable for any additional drainage tax, if necessary, which may be required to pay the said refunding bonds by reason of the default in payment of drainage taxes levied against other lands in the" District. All moneys paid by land owners for the purpose of releasing lands from subsequent annual installment levies will be

applied in the same manner as if they had been received in payment of subsequent levies and assessments made under the terms of the refunding resolution.

One of the first assignments is raised by a motion to dismiss or strike filed on the part of Murray Sams, State Attorney, S. O. Doty, W. J. Gardiner and wife, S. Elizabeth Gardiner, directed to the following described portion of the refunding resolution dated July 17, 1936, made a part of the petition for validation and is identified as number 3, *supra,* and is, viz.:

"As also will levy and assess in the manner and as provided by law, such further and additional taxes as may be necessary and required for the purpose of providing and raising sufficient moneys with which to pay the principal of the original bonds of the said Halifax Drainage District of Volusia County, Florida, issued June 1st, A. D. 1921, and the principal of any refunding bonds issued by virtue of said refunding resolution, as well as interest which will accrue upon the said refunding bonds by reason of the extension and continuation of the original obligation in the form of said refunding bonds."

The question embraces assignments of error numbered two, three and seven. The refund resolution was drawn under Chapter 13627, Acts of 1929, and duly adopted by the Halifax Drainage District, and the petition for validation, being the suit at bar, was drawn under Chapter 13627, Acts of 1929. The grounds of the several motions broadly are, viz.: (a) The drainage laws, being Sections 1098 to 1152 R. G. S., and Sections 1451 to 1522 C. G. L., do not authorize and empower additional taxes on the drainage district; (b) the Halifax Drainage District has not the power to levy and collect taxes without limitation; (c) the District, as a matter of law, is restricted in its levy to *benefits;* (d) the refunding resolution provides for a

greater and an additional levy and assessment than was provided for by the original resolution authorizing bonds; (e) the district is attempting to pledge greater security for the refunding bonds than was pledged for the original bonds; (f) there is no law authorizing pledges for an additional levy and assessment as against the property within the drainage district; (g) other grounds of the motions are unnecessary to be recited for a determination of this point.

The power of the District to make an additional levy or assessment must be found in the statutes, *supra*. If the Legislature failed to grant the power, it is clear that the same is retained. This Court has, from time to time, construed or interpreted the above drainage laws, and we are bound by these decisions. In the case of Moran v. State, *ex rel.* Montgomery, 111 Fla. 429, text pages 431-32, 149 So. 477, this Court said:

"Drainage districts organized under the general drainage law are not clothed with power to levy and collect taxes without limit to meet debts and other obligations incurred by them. Such tax levies are restricted by the amount of benefits shown from the plan of reclamation and when this amount is reached the power to tax is cut off. Section 1114, Revised General Statutes of 1920, Section 1467, Compiled General Laws of 1927. They cannot, therefore, be classified with municipalities and other taxing units having an inexhaustible taxing power on which the rule as above announced was predicated. * * *

"In theory the law contemplates that the bonds issued to execute the plan of reclamation will be paid in full before the assessments to that extent have been made, but here the record shows that this cannot be done. The fund from which they must be paid is limited or special, and when this limit is reached there is no other means provided for payment of the bonds. Under such a state of facts we do not

consider this is a proper case for the application of the mandamus rule of 'first come first served' as was done in State v. Carlton, *supra* (103 Fla. 810, 138 So. 612).

"The 'first come first served' rule is predicated on an unlimited taxing power, but should not be followed when the taxing power is special and limited and to do so would work an injustice on bondholders or claimants of equal dignity and it is conclusively shown that it would result in some claimants receiving nothing for their claims.

"It follows that the funds brought in question, being special or limited, are charged with a definite trust and if not sufficient to pay all bond and coupon claimants in full they should be distributed among them on a pro rata basis. In this they become equitable assets, not the subject of a suit at law."

This Court in construing the drainage statutes, *supra,* discussed benefits to the property of the drainage district, as well as the cost of the improvements contemplated, in the case of Certain Lands v. East Palatka Drainage District, 111 Fla. 795, text 796, 149 So. 766, when it was said:

"* * * The drainage tax is imposed under the Act challenged by the board of supervisors of the drainage district on the basis of benefits and must be such portion of the benefits as amounts to the cost of the improvement. It is collected in annual installments, each installment being a portion of the total tax levy. Sections 1114 and 1115, Revised General Statutes of 1920, Sections 1467 and 1468, Compiled General Laws of 1927, being the applicable law on this point. Under Sections 1120 and 1121, Revised General Statutes of 1920, *supra,* we find ample authority for the instant suit * * *."

In the case of State, *ex rel.* Mosteller, v. Gay, 112 Fla. 230, 150 So. 282, this Court said:

"The statute, now Section 1451 (1098) *et seq,* Compiled General Laws, under which Taft Drainage District was organized and operates, provides not for *ad valorem taxes* to pay bonds issued for drainage purposes, but for bonds issued by the district to be paid by special assessments of lands within the district according to benefits estimated to accrue to the lands assessed, from drainage operations. While the county tax collector is required to collect the special assessments levied for benefits, such assessments are made in a special 'drainage tax book,' and collection of such special assessments are not enforced by a sale of the lands by the tax collector, nor are the amounts of the assessments included in State and county tax sale certificates, as are *ad valorem taxes* levied for road district and school district bond purposes. The drainage district assessments for bond payments are enforced by suits in equity and not by sale of the land by the tax collector."

See: Sovereign Camp W. O. W. v. Lake Worth Inlet District, 119 Fla. 782, 161 So. 717; First State Bank v. Little River Drainage District, 122 Fla. 304, 165 So. 48; State, *ex rel.* Root, v. Crandon, 115 Fla. 153, 155 So. 667.

It appears that Section 1114 of the 1920 Revised General Statutes limits the power of the Board of Supervisors to levy a tax on the drainage area to benefits to pay the cost of completion of the improvement or proposed work. We are unable to read into the statutes any power or authority on the part of the Halifax Drainage District to impose an additional levy or assessment on the property situated in the drainage area. We find no merit in assignments of error two, three and seven.

The following described portion of the final decree is made the appellant's fourth assignment of error:

"That the lands of the Intervenor and Defendant, S. O. Doty, are not liable for the payment of any further sinking

fund taxes because and by reason of the allegations in the answer of the said Intervenor and Defendant, S. O. Doty, wherein it is alleged that the said Intervenor and Defendant, S. O. Doty, did prior to the adoption of the said refunding resolution, pay all of the said Halifax Drainage District of Volusia County, Florida, taxes levied by the said original resolutions against his said lands and which said allegations were at the said hearing admitted to be true by counsel for the Petitioner, Halifax Drainage District of Volusia County, Florida."

The answer of defendant, S. O. Doty, shows, undisputed on the record, that he owns land located in the drainage district when it was organized and when the refund resolution was adopted July 17, 1936. The amount shown to have been assessed against the land was the sum of $599.00 and he paid 68½% thereof and under the authority of the *refunding resolution* adopted by the Board of Supervisors of the Drainage District paid the remaining 31½%. and Halifax Drainage District is without authority of law to levy an additional tax against his said lands for the purpose of paying the *principal and interest* on the bonds issued by the District on June 1, 1921, as well as the principal and interest on the refunding bonds, and that Doty's lands now stand discharged from the lien created by the general drainage statutes, *supra*.

It appears that the answer to this contention is found in Sections 1114 and 1138 R. G. S. of 1920. While the Board of Supervisors of the District is without power to levy and assess additional taxes not authorized by the original resolution and thereby giving additional security to the bonds not contemplated by the parties, it cannot be overlooked that the Board of Supervisors of the District has power to levy a tax for costs and emergencies, equal to, but not in *excess of the assessed benefits,* when the same, after col-

lection, can be applied to the liquidation of the principal and interest of the bonds of the District. The statutes, *supra,* contemplate that the tax levied or assessed "for costs and emergencies" shall not exceed the assessed benefits. It therefore follows that the lower court committed reversible error in decreeing a discharge of the Doty lands.

Assignment of error number five is predicated on the described portions of the final decree appealed from, viz.:

"The the Intervenors and Defendants, W. J. Gardiner and wife, S. Elizabeth Gardiner, are entitled under and by virtue of the provisions of Chapter 13627 of the 1929 Laws of the State of Florida, to pay the full amount of the uncollected principal or assessment chargeable to their lands for the payment of the bonds proposed to be refunded by the said Halifax Drainage District of Volusia County, Florida, and the Board of Supervisors of the said Halifax Drainage District of Volusia County, Florida, should not have refused to accept the unlevied principal portion of the total original tax levied against the lands of the said W. J. Gardiner and wife, S. Elizabeth Gardiner, the same being the uncollected principal chargeable to the lands for the payment of the principal of the said refunding bonds and not heretofore levied as part of the annual installment taxes by the Board of Supervisors of the said Halifax Drainage District of Volusia County, Florida. This is so because it would be manifestly unfair and inequitable to collect from any land owner who is willing to pay, prior to the issuance of refunding bonds as is authorized by the said Chapter 13627 of the 1929 Laws of the State of Florida, that portion of the unlevied drainage tax that was originally levied for interest. No refunding bonds could be exchanged or sold for such unlevied principal portion of the original tax levied against such 'land owners' land, and consequently, no interest would be paid by the said Halifax

Drainage District of Volusia County, Florida, upon the said principal part or portion of such unlevied tax so paid by such land owner under the provisions of said Chapter 13627 of the 1929 Laws of Florida."

The record shows that W. J. Gardiner and his wife, S. Elizabeth Gardiner, owned land located within the drainage district when organized and continuously since. The original total tax levied against the Gardiner lands amounted to the total sum of $161.88; that 68½% of said sum had been levied by the District and paid by the Gardiners. The said sum of $50.99 had not been levied by the district against the Gardiner land nor paid by them. The said sum of 51½% of $50.99 represented the portion of the original total tax levied for the purpose of paying interest estimated to accrue on the original lands. It is contended by the Gardiners that their lands situated within the drainage district will be discharged from the assessed benefits or improvement lien under the statutes, *supra,* when they pay or caused to be paid the said sum equal to $48.49 plus % of the balance of $50.99. The lower court in its final decree sustained the contention of the Gardiners above briefly expressed.

Counsel for appellees cite in support of their contention Section 1146 R. G. S. 1920, which reads as follows:

"Any person or corporation, co-partnership or other parties owning lands assessed for the construction of any canal, ditch or other improvement under the provisions of this article, shall have the privilege of paying such tax assessment to the treasurer of the board of supervisors at any time on or before a date to be fixed by the board of supervisors and the amount to be paid shall be the full amount of the tax levied, less any amount added thereto to meet interest. When such tax assessment has been paid, the secretary of the board shall enter upon the drainage tax record

opposite each tract for which payment is made the words 'paid in full,' and such tax assessment shall be deemed satisfied, and the secretary of the board of supervisors shall also make or cause to be made the same entry opposite each tract for which payment is made in the table included in the certificate filed in the office of the clerk of the circuit court under the provisions of Section 1119."

Also the following portion of Chapter 13627, Acts of 1929:

"Section 1. * * * Any land owner shall have the right at any time within thirty days after the adoption of the resolution providing for the issuance of the refunding bonds to pay the full amount of uncollected principal or assessment chargeable to his land for the payment of the bonds proposed to be refunded, and his lands shall thereby be released from any tax or assessment for the payment of said bonds; provided, however, his land shall remain liable, subject to the limitations prescribed in the law under which the original bonds were issued and the original or revised benefits assessed against said land, for any additional tax which may be required to pay said bonds by reason of other lands in the district not paying the tax or assessment. Unless and until refunding bonds shall have been authorized and issued, the governing board shall continue the levy of annual taxes sufficient to pay the outstanding bonds and interest thereon as they fall due * * *."

The rights granted under Section 1146, *supra,* contemplate that the owner or owners of property located within the drainage district shall avail themselves of said right or privilege "at any time on or before a date to be fixed by the board of supervisors and the amount to be paid shall be the full amount of the tax levied, less any added thereto to meet interest." It has not been made to appear that the board of supervisors of the district named or set a date for the

payment of said tax assessments. The phrase "less any amount added thereto to meet interest" contemplated that the Legislature intended that the payment should be paid in conformity to a date fixed by the board of supervisors *prior* to the date that drainage district *issued* bonds. If such payments were made by the land owners in the district it is doubtful if the board of supervisors would be required to finance the project by the issuance of bonds, but could use the money paid by the land owners of the district to discharge the assessments and continue with the improvements without issuing bonds.

We are unable to follow the reasoning offered by counsel for appellees. See Humphreys v. State, *ex rel.* Palm Beach Co., 108 Fla. 92, 145 So. 858; City of Clearwater v. State, *ex rel.* United Mutual Life Ins. Co., 108 Fla. 623, 147 So. 459; State, *ex rel.* Harrington, v. City of Daytona Beach, 118 Fla. 773, 160 So. 501. The lower court erred in the entry of the last above described portion of the final decree.

It appears that assignment of error number six is controlled by the conclusion reached as to assignment number five.

It is further contended that the lower court erred in its final decree in paragraph three thereof by fixing a single maturity date for the refunding bonds. The refunding proceedings are authorized by Chapter 13627, Acts of 1929. The Act provides : "if the holders thereof (old bonds) will surrender them, and issue in lieu thereof new bonds of such district payable in such longer time not to exceed fifty years from their date as said governing board shall determine." It is clear that the Legislature intended to clothe the governing board of the district with power and authority to fix the date or dates of the maturity of the refunding bonds so issued, and in doing so fixed the time of maturity thereof from one year after maturity to maximum maturity date of

fifty years from date of issuance. The lower court had the power and authority to fix the date or dates of maturity of the refunding bonds from one to fifty years. There was no error on this ruling on the part of the lower court.

The decree appealed from is reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs in the conclusion.

### ON PETITION FOR REHEARING.

CHAPMAN, J.—On petition for rehearing we are requested to consider the following assignment of error appearing in the original opinion, viz.:

"As also will levy and assess in the manner and as provided by law, such further and additional taxes as may be necessary and required for the purpose of providing and raising sufficient moneys with which to pay the principal of the original bonds of the said Halifax Drainage District of Volusia County, Florida, issued June 1st, A. D. 1921, and the principal of any refunding bonds issued by virtue of said refunding resolution, as well as interest which will accrue upon the said refunding bonds by reason of the extension and continuation of the original obligation in the form of the said refunding bonds."

It was emphasized that if no additional taxes could be levied by the Supervisors of the Drainage District, the only source of payment to which the bondholders could look for payment would be to the total balance due on the original total tax which had not been levied, and it was apparent that the bonds and accumulated interest would never be

paid, which would render the bonds of the Halifax Drainage District of no practical value.

Drainage districts have no power or authority other than that conferred by statute. Section 1460 C. G. L. grants to the Board of Supervisors, after the drainage district has been lawfully organized, the power to levy a reclamation tax not exceeding 50 cents per acre of the drainage district for the purpose of defraying organization costs. The moneys arising from this source shall be used for the purpose of paying expenses previously incurred or to be incurred in organizing the drainage district, making surveys of the same, and assessing benefits and damages, and this is required before the Board of Supervisors shall be empowered to provide funds to pay the improvement costs of the district.

Section 1467, C. G. L., grants to the Board of Supervisors power to levy a tax on all lands in the district "for benefits" which have been assessed and found necessary by the Board of Supervisors to pay the costs of completion of the improvements, or "plan of reclamation." It will be observed that the power to levy a tax by the Board of Supervisors is limited solely to the benefits on the lands located within the District upon the theory that after the plan of reclamation is completed, the values of the lands within the area will be increased. The third tax which the Board of Supervisors may levy in carrying out their plan of reclamation is an emergency tax, being 10% of the total amount of the costs of benefit taxes in addition to the benefit tax.

If the drainage district desires to issue bonds to raise money to finance the plan of reclamation, the Board of Supervisors has the power to issue bonds in an amount not exceeding 90% of the benefits assessed upon the lands of the district. The amount of the interest which will accrue on the bonds shall be included and added to the said tax,

but the interest to accrue on account of the issuance of said bonds shall not be construed as a part of the construction in determining whether or not the expenses and costs of making the improvements are equal to or in excess of the benefits assessed. It will be observed that drainage districts are limited in power to levy and collect taxes. The power to levy and collect taxes on the lands in the drainage area is restricted to the amount of benefits shown by the plan of reclamation. See Moran v. State, *ex rel.* Montgomery, 111 Fla. 429, 149 So. 477; Certain Lands v. East Palatka Drainage District, 111 Fla. 795, 149 So. 766.

It is next contended that the original bonds pledged the full faith and credit of the drainage district. The assets are the liens which the district acquired for the total tax and it had a possessed power to levy an *additional* tax, if the original tax proved insufficient to pay the bonds and interest of the district. It appears that the proper construction or interpretation is that the full faith and credit of the resources of the Halifax Drainage District to the extent and limit as authorized by law is in regard to all liens created by the special assessments. See State, *ex rel.* Root, v. Cranden, 115 Fla. 153, 155 So. 667.

It is next contended that the defendant, S. O. Doty, paid all taxes authorized under Section 1114, R. G. S., 1467, C. G. L., inclusive of all obligations created by virtue of the original resolution authorizing the issuance of bonds of the Halifax Drainage District. The statute, *supra,* provides: "The amount of the interest (as estimated by the Board of Supervisors) which will accrue on such bonds shall be included and added to the said tax (meaning assessment benefits and emergency tax). It has not been made to appear on this record that the defendant, Doty, paid, or caused to be paid, within the time prescribed or fixed by the statute, the interest on bonds accruing after

date of issuance. Neither has he paid or caused to be paid the original bonds or any part thereof issued by the Drainage District wherein his lands are located. If the bonds of the Halifax Drainage District are refunded the lands of the defendant, Doty, can be discharged of the bonds and interest by following the provisions of Section 1 of Chapter 13627, Laws of Florida, 1929.

The record shows that the defendants, W. J. Gardiner and wife, S. Elizabeth Gardiner, own lands situated within the Halifax Drainage District and claim that their lands should be discharged from all liens by the payment on their part of given items composing the total cost of the original bonds and that their lands would likewise be discharged by payment of the estimated items incurred in refunding the said drainage bonds. The right granted by statute to all owners of property situated in the drainage district contemplates that the right or privilege of paying the assessments shall be exercised by the land owner at any time on or before a date to be fixed by the Board of Supervisors, and when the amount so assessed is paid, the same shall be the full amount of the tax levy, less the amount included to pay interest, and when the same is done the lands will be free from any and all liens. It has not been made to appear that the Gardiners availed themselves of the privilege and opportunity to pay or cause to be paid the amount assessed against their lands in the drainage district in regard to the original issue of bonds.

The Gardiners have the right accorded by Section 1 of Chapter 13627, Acts of 1929, to discharge from any and all liens their lands situated within the drainage district by paying the amount due for the refunding bonds as prescribed by Chapter 13627, *supra*. The plan of payment of the refunding bonds is fully provided for by Chapter 13627, *supra*.

The original opinion previously entered in this cause, on rehearing, is adhered to except as altered or modified by this said opinion on rehearing.

WHITFIELD, BROWN and BUFORD, J. J., concur.

ON SECOND PETITION FOR REHEARING.

PER CURIAM.—The facts in this case have been amply detailed in the opinion filed July 23, 1938, and in the opinion on the first rehearing filed at a later date. On second petition for rehearing, there seems to be confusion with reference to the scope and effect of these opinions.

The refunding bonds involved in this litigation were proposed pursuant to Chapter 13627, Acts of 1929, the original bonds having been issued as provided by Chapter 6458, Acts of 1913, under which the appellant was incorporated. Chapter 13627, Acts of 1929, is the only authority for issuing refunding bonds and require that all such bonds be issued as required by the Act incorporating the district and under which the original bonds were issued. The two Acts are *in pari materia* and should be construed together.

Chapter 6458, Acts of 1913, requires the district, when it issues bonds, to fix the maturities to occur at annual intervals within thirty years, commencing at a period of years not later than ten and to levy annual installments of the total tax imposed to liquidate them. The Act in other words provides for serial bonds maturing within thirty years with payments to begin not later than ten years. Chapter 13627 does not change this feature of the former Act except to make bonds payable in fifty instead of thirty years. The bonds validated by the lower court all mature thirty years from date of issue. This was error. Maturities should have started not later than ten years, there being no provision in either statute for the accumulation or the safeguarding of a sinking fund.

May the sum of the total tax authorized under Section Seventeen, Chapter 6458, Acts of 1913, Section 1467, compiled General Laws of 1927, including the interest on the refunding bonds, exceed the benefits to the lands in the district as found in the plan of reclamation?

The lower court answered this question in the negative and appellee contends that his decision should be upheld. Both rely on Moran v. Montgomery, 111 Fla. 429, 199 So. 477, and like cases to support this contention. Briefs on both sides disclose much confusion with reference to this case. The question before us in that case was whether or not we would extend the "first come, first served" doctrine to the payment of bonds and coupons of a drainage district organized under the general drainage law. It was shown that the drainage district in question was years in default, was bankrupt with no prospect of paying all its bonds, and with only a limited fund in hand to pay bonds and coupons then past due. We held that under such circumstances, the fund in hand should be prorated and that the "first come, first served" doctrine did not apply. We think that holding was correct as applied to the facts in that case.

Chapter 6458, Acts of 1913, provides two methods of financing drainage districts organized thereunder. Section 17, being Section 1467, Compiled General Laws of 1927, provides that the Board of Supervisors may levy a tax sufficient to execute the plan of reclamation and may spread it over a period of years, but the total cannot exceed the cost of the plan of reclamation. Section 41, being Section 1493, Compiled General Laws of 1927, when construed in connection with Section 17, provides that the Board of Supervisors may issue bonds to execute the plan of reclamation, but that such issue shall not exceed ninety per cent. of the cost of the benefits as shown by the plan of reclamation. Interest may be paid on such bonds and is an added

cost of construction. In this event, the property owner in the district is given the opportunity and has the option to pay the full amount of tax assessed for bonds less interest and be relieved of the payment of any bond tax. When this is done, the bonds must be reduced by the amount of assessments paid and the tax on the land of those who pay must be marked paid in full.

In cases where the plan of reclamation is executed by a total tax collected in one year or spread over a period of years, the total tax cannot exceed the amount of benefits as shown by the plan of reclamation. This may be the case when the Board of Supervisors elect to issue bonds to exe-- cute the plan of reclamation, but in all such cases the amount of bonds is limited by the benefits and the interest on the bonds is an added expense. If the bonds issued amount to the allowable limit, the added interest taken with the principal may exceed the benefits. If paid in annual installments, each installment is a lump sum of the total assessment.

If the proceeds of the tax first levied is not sufficient to pay all bonds with interest, the Board of Supervisors has power under Sections 41 and 46, Sections 1493 and 1500, Compiled General Laws of 1927, to make an additional levy in the same manner the first levy was made. The second levy may apply to the original bonds, other emergencies, or for the principal and interest on refunding bonds issued in lieu of the original bonds, but must in all respects meet the requirement of the law authorizing it.

Rehearing denied.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.