Dear Ms. Willis:
On behalf of the Florida Keys Mosquito Control District, you have asked for my opinion on substantially the following question:
Is the Florida Keys Mosquito Control District authorized to purchase real property for the purpose of leasing that property to a not-for-profit tenant?
According to your letter, the Florida Keys Mosquito Control District is planning to construct a new office facility on property currently occupied by a not-for-profit animal shelter. The district proposes to purchase property elsewhere in the county and then lease that property to the animal shelter for relocation of the shelter. You have advised this office that the district would relocate the shelter as a goodwill gesture. The district would then demolish the buildings on the property adjacent to its current office building and build a new office facility. Your question is whether the district may purchase real property elsewhere in the county with the express intent of leasing it to a not-for-profit entity that has no mosquito control duties.
The Monroe County Mosquito Control District was renamed the Florida Keys Mosquito Control District and the special acts relating to the district were codified, amended, reenacted, and, in some cases, repealed, in Chapter 2002-346, Laws of Florida.[1] The district is governed by a five-member board of commissioners, each of whom serves for a four-year term.[2] Among the powers of the board of commissioners of the district is the power "to purchase, hold, lease, and convey such real estate and personal property as a majority of the board may deem proper to carry out the purposes of this act" and "to contract and cooperate with county, state, and other governmental agencies in regard to mosquito control or suppression[.]"[3]
The special act creating the district describes the duties of the board as follows:
"The Board of Commissioners of the Florida Keys Mosquito Control District shall perform all duties necessary for the control and elimination of mosquitoes and other arthropods of public health importance in the county, and the board is authorized to provide for the construction of canals, ditches, drains, dikes, fills, and other necessary works, and to install and maintain pumps, excavators, and other machinery and equipment, and may also employ oils and chemicals and all other means and methods, and do any and all things, that may be necessary to eliminate and control mosquitoes and other arthropods in Monroe County at the discretion of the board."[4]
The board possesses the power to condemn land "for the purposes of said district"[5] and the special act authorizes the district and the board "to use any and all privileges or powers which are granted to mosquito control districts under the general laws of this state."[6]
Chapter 388, Florida Statutes, relating to mosquito control, provides similar powers and duties for mosquito control districts. Section 388.191, Florida Statutes, extends the power of eminent domain to the boards of commissioners of mosquito control districts in terms identical to those set forth in the special act for the Florida Keys Mosquito Control District. Chapter 388 also provides a method for the disposal of surplus property by the districts. As provided in section 388.323, Florida Statutes:
Surplus property shall be disposed of according to the provisions set forth in s. 274.05 with the following exceptions:
"(1) Serviceable equipment no longer needed by a county or district shall first be offered to any or all other counties or districts engaged in arthropod control at a price established by the board of commissioners owning the equipment. If no acceptable offer is received within a reasonable time, the equipment shall be offered to such other governmental units or private nonprofit agencies as provided in s. 274.05.
(2) The alternative procedure for disposal of surplus property, as prescribed in s. 274.06, shall be followed if it has been determined no other county, district, governmental unit, or private nonprofit agency has need for the equipment.
(3) All proceeds from the sale of any real or tangible personal property owned by the county or district shall be deposited in the county's or district's state fund account unless otherwise specifically designated by the department."
While mosquito control districts have specific powers to deal with real property in order to accomplish the purposes of the districts, nothing in the special act, Chapter 2002-346, Laws of Florida, or in Chapter 388, Florida Statutes, authorizes a mosquito control district to purchase real property for purposes other than mosquito control.
As a statutorily created entity, a mosquito control district may only exercise such powers as have been expressly granted by that act or must necessarily be exercised in order to carry out an express power. Any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[7] The implied powers accorded administrative agencies must be indispensable to powers expressly granted, that is, those powers that are necessarily or fairly or reasonably implied as an incident to those powers.[8]
Thus, the mosquito control district's powers are measured by the terms of the act under which it is organized and it can exercise no authority that has not clearly been granted to it by the Legislature or that is necessarily implied from the powers conferred. While an express power duly conferred may include the implied authority to use the means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred.[9] Any implied power must necessarily be implied from a duty that is specifically or expressly imposed by statute.[10]
Mosquito control districts have specific powers to purchase and dispose of real property. These powers are specifically limited and must advance the purposes of the districts as set forth in the special acts creating these districts and in Chapter 388, Florida Statutes. Nothing in either of these sources provides authority for the Florida Keys Mosquito Control District to purchase real property for investment or charitable purposes.
Therefore, while the mosquito control district is to be commended for considering the welfare of the community in relocating the animal shelter, it is my opinion that the Florida Keys Mosquito Control District is not statutorily authorized to acquire land for the purpose of leasing that land to a not-for-profit tenant for relocation.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] And see, s. 24, Ch. 97-255, Laws of Fla., requiring the codification by each district of all special acts relating to special districts into a single act for reenactment by the Legislature.
[2] Section 3(1) and (2), Ch. 2002-346, Laws of Fla., as re-created in § 3, Ch. 2002-346, Laws of Fla.
[3] Section 5, Ch. 2002-346, Laws of Fla., Laws of Fla., as re-created in § 3, Ch. 2002-346, Laws of Fla.
[4] Section 6, Ch. 2002-346, Laws of Fla., Laws of Fla., as re-created in § 3, Ch. 2002-346, Laws of Fla.
[5] Section 12, Ch. 2002-346, Laws of Fla., Laws of Fla., as re-created in § 3, Ch. 2002-346, Laws of Fla.
[6] Section 5, Ch. 2002-346, Laws of Fla.
[7] See Halifax Drainage District of Volusia County v. State,185 So. 123, 129 (Fla. 1938); State ex rel. Greenberg v. Florida StateBoard of Dentistry, 297 So.2d 628 (Fla. 1st DCA 1974), cert. dismissed,300 So.2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., ofFlorida, 281 So.2d 493 (Fla. 1973). And see e.g., Ops. Att'y Gen. Fla. 02-30 (2002) and 04-48 (2004).
[8] See, e.g., Gardinier, Inc. v. Florida Department of PollutionControl, 300 So.2d 75, 76 (Fla. 1st DCA 1974); Williams v. Florida RealEstate Commission, 232 So.2d 239, 240 (Fla. 4th DCA 1970).
[9] Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936); Ops. Att'y Gen. Fla. 04-48 (2004), 78-101 (1978) 78-94 (1978), and 75-299 (1975).
[10] See Florida State University v. Jenkins, 323 So.2d 597 (Fla. 1st DCA 1975); Ops. Att'y Gen. Fla. 03-49 (2003) and 73-374 (1973).