Dear Mr. Pritt:
As legal counsel to the Upper Captiva Fire Protection and Rescue Service District, you have asked for my opinion on substantially the following question:
Is the Upper Captiva Fire Protection and Rescue Service District authorized to construct, require maintenance of or maintain private roads and pathways that have been damaged or may suffer damage on North Captiva Island?
The Upper Captiva Fire Protection and Rescue Service District is an independent special fire control district that operates and is controlled by its enabling special act and the provisions of Chapter 191, Florida Statutes. Pursuant to section 191.015, Florida Statutes, the district recently consolidated all its special acts into Chapter 2004-470, Laws of Florida.[1]
Section 3 of Chapter 2004-470, Laws of Florida, sets forth the powers of the district and provides:
 "The district shall have, and the board may exercise by majority vote, all powers that an independent special fire control district is authorized by law to have, specifically including, without limitation, all powers set forth in chapter 189, Florida Statutes, to the extent applicable, and chapter 191, Florida Statutes, as it may be amended from time to time. Without limiting any general or special powers otherwise granted by law, the district shall have the power to establish and maintain fire suppression and control services; provide emergency medical services and rescue response services; acquire and maintain fire stations and equipment pursuant to law; acquire and maintain rescue, medical, and other emergency equipment pursuant to the provisions of chapter 401, Florida Statutes, and provide or obtain any certificate of public convenience and necessity or its equivalent issued thereunder; employ such personnel and engage services of such persons as are deemed necessary for the proper function and operation of the district; provide or require maintenance of roadways, rights-of-way, alleyways and pathways and docking facilities for fire safety and rescue purposes and to impose fees, impact fees, or assessments upon real property for such purposes; and adopt ordinances and resolutions necessary to conduct district business, provided that they are not in conflict with any ordinances of Lee County." (e.s.)
The district is clearly authorized to provide maintenance of roadways, rights-of-way, alleyways, pathways, and docking facilities for purposes of fire safety and rescue. In addition, the district is authorized to impose fees and assessments to accomplish these purposes.
Florida courts and this office have concluded that public funds may only be spent for the construction, maintenance, or repair of public roads.[2] In Attorney General Opinion 92-42, this office stated that the fact that certain public vehicles, such as school buses, were permitted to travel on a private road did not authorize a county to expend county funds to repair and maintain the road when the general public was not allowed to travel on it.
A governmental entity, therefore, may use public funds for the construction, maintenance, or repair of a road only when the road is a "public" road. This office has concluded that a "public" road is one open to and set apart for the public, as opposed to a private road that by its nature is not open to the public and upon which the public has no right to travel.[3] The roadways and pathways about which you inquire have not been dedicated to the public.
As a statutorily created entity, the district has only such powers and authority as have been expressly granted by law or may be necessarily implied therefrom in order to carry out an expressly granted power.[4] Any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[5] The implied powers accorded to administrative agencies must be indispensable to powers expressly granted, that is, those powers that are necessary or fairly or reasonably implied as an incident to those powers.[6]
Thus, the powers of the special district are measured by the terms of the act under which it is organized and the district can exercise no authority that has not clearly been granted to it by the Legislature or that is not necessarily implied from the powers conferred. While an express power duly conferred may include the implied authority to use the means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred.[7]
The Upper Captiva Fire Protection and Rescue Service District was created to "provide emergency medical services and rescue response services . . ." to the public. Nothing in the district's enabling legislation indicates a legislative intent that the district expend public funds for the maintenance of private property. While the general language of section 3, Chapter 2004-470, Laws of Florida, is broad and general with regard to the authority of the district to provide or require others to provide maintenance of roadways and to impose fees to accomplish that purpose, these powers must be exercised in accord with the constitutional mandate that public funds only be spent for a public purpose.
You have brought to my attention several recent Attorney General Opinions concluding that a county has the authority to enter a program of private road maintenance if the board of county commissioners, in the exercise of the county's home rule powers, determines that such a program serves a county purpose.[8]
These opinions conclude that counties may enter such arrangements if provision is made for payment of all actual costs by the owner of the private property to the county. The opinions caution that all actual costs of providing such service must be reimbursed, "such costs to include not only the cost of using the equipment but the depreciation of the machinery, salary and employee benefits being accrued by the county personnel providing such services."[9] As discussed above, special districts are governmental entities with limited, special authority to accomplish specific purposes and do not possess the broader home rule powers of counties.
Therefore, it is my opinion that the Upper Captiva Fire Protection and Rescue Service District is not authorized to use public funds to construct or maintain private roads and pathways on North Captiva Island. However, the county may furnish such service if provision is made for payment of all actual costs by the owners of the private roads to the county and it is determined that such a program serves a county purpose.
Sincerely,
 Charlie Crist Attorney General
CC/tgh
[1] Section 191.015, Fla. Stat, requires each fire control district to submit to the Legislature a draft charter for purposes of codifying, into a single act, the provisions of law relating to the district.
[2] See Padgett v. Bay County, 187 So. 2d 410 (Fla. 1st DCA 1966); Collins v. Jackson County, 156 So. 2d 24 (Fla. 1st DCA 1963); Ops. Att'y Gen. Fla. 99-73 (1999), 99-15 (1999), 94-89 (1994), 78-88 (1978), 75-309 (1975) and 73-222 (1973). Cf.,Lovey v. Escambia County, 141 So. 2d 761 (Fla. 1st DCA 1962) (county's maintenance of road for more than four years raised presumption of dedication).
[3] Attorney General Opinions 99-73 (1999) and 99-15 (1999).
[4] See, Halifax Drainage District of Volusia County v.State, 185 So. 123, 129 (Fla. 1938); Ops. Att'y Gen. Fla. 96-90 (1996) and 89-42 (1989).
[5] See Id. At 129; State ex rel. Greenberg v. Florida StateBoard of Dentistry, 297 So. 2d 628 (Fla. 1st DCA 1974), cert.dismissed, 300 So. 2d 900 (Fla. 1974); City of Cape Coral v.GAC Utilities, Inc., of Florida, 281 So. 2d 493 (Fla. 1973).And see, e.g., Ops. Att'y Gen. Fla. 02-30 (2002) and 04-48 (2004).
[6] See, e.g., Gardinier, Inc., v. Florida Department ofPollution Control, 300 So. 2d 75, 76 (Fla. 1st DCA 1974);Williams v. Florida Real Estate Commission, 232 So. 2d 239, 240
(Fla. 4th DCA 1970).
[7] Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936); Ops. Att'y Gen. Fla. 04-48 (2004), 78-101 (1978), 78-94 (1978), and 75-299 (1975).
[8] Attorney General Opinions 02-48 (2002), 99-73 (1999) and 99-15 (1999).
[9] See, Ops. Att'y Gen. Fla. 99-73 (1999) and 02-48 (2002).