Dear Mr. Lewis:
On behalf of the Board of Supervisors of the Spring Lake Improvement District, you have asked for my opinion on substantially the following questions:
1. Is the Board of Supervisors of the Spring Lake Improvement District authorized to purchase a multi-use golf course facility located within the district that includes a driving range, restaurant, bar, sewer plant and related businesses and manage its operations for water control and recreation purposes for the use and benefit of all district landowners?
2. If the answer to Question One is in the affirmative, is the board authorized to enter into an agreement with a private corporation that would manage the facilities under board direction or, in the alternative, lease the facilities to be operated and managed independently?
3. Is the Board of Supervisors of the Spring Lake Improvement District authorized to issue bonds for periods of time greater than 5 years in order to finance the purchase of this golf course property?
In sum:
In light of the absence of an adopted water control plan and considering the requirement that the powers of the district must be exercised to accomplish water control district purposes, it is my opinion that the Spring Lake Improvement District is not authorized to purchase a multi-use golf course facility located within the district that includes a driving range, restaurant, bar, sewer plant, and related businesses.
Question One
You have provided this office with no information regarding the terms of this potential sale nor have you offered any description of the property involved other than that included in your question. I understand from your letter that the Spring Lake Improvement District has never completed its district water control plan, but now proposes to purchase a multi-use golf course facility including a driving range, restaurant, bar, sewer plant, and related businesses. The board contemplates entering into an agreement for the management of this facility either under its own direction or independently and is seeking to determine whether long-term bond financing may be legally appropriate for this transaction.
The Spring Lake Improvement District was created as the Spring Lake Drainage District pursuant to Chapter 298, Florida Statutes.[1] The name of the district was changed to the Spring Lake Improvement District by Chapter 71-669, Laws of Florida, which broadened the scope of the powers and duties of the district as they related to the construction of roads and highways, drainage and water control systems, water and sewage facilities, and recreational facilities.[2] In 2005, pursuant to a legislative mandate, all of the special acts relating to the district were codified in order to provide a single, comprehensive special act charter for the district. This charter included all current legislative authority provided to the district by its several legislative enactments and any additional authority granted by the 2005 legislation.[3]
Section 298.22(3), Florida Statutes, was amended in 2005 to authorize water control districts to purchase real or personal property.[4] As amended, the statute now provides that a board of supervisors of a water control district
"[m]ay build and construct any other works and improvements deemed necessary to preserve and maintain the works in or out of said district; acquire, construct, operate, maintain, use, purchase, sell, lease, convey, or transfer real or personal property, including pumping stations, pumping machinery, motive equipment, electric lines and all appurtenant or auxiliary machines, devices, or equipment."
Thus, the Spring Lake Improvement District is legislatively authorized to purchase real property to accomplish the purposes of the district.
In addition to the general statutory authority provided to water control districts by section 298.22(3), Florida Statutes, the Spring Lake Improvement District possesses certain specific powers relating to the purchase of real property. Section 10, Chapter 2005-342, Laws of Florida, provides that the district shall have, and the board may exercise, a number of powers, including the power:
"(2) To adopt a water control plan; and to establish, construct, operate, and maintain a system of main and lateral canals, drains, ditches, levees, dikes, dams, sluices, locks, revetments, reservoirs, holding basins, floodways, pumping stations, syphons, culverts, and storm sewers to drain and reclaim the lands within the district and to connect some or any of them with roads and bridges as in the judgment of the board is deemed advisable to provide access to such facilities.
(3) To acquire and maintain appropriate sites for storage and maintenance of the equipment of the district and to acquire, maintain, and construct a suitable building to house the office and records of the district.
(4) To clean out, straighten, widen, open up, or change the courses and flow, alter, or deepen any canal, ditch, drain, river, water course, or natural stream as within the judgment of the board is deemed advisable to drain and reclaim lands within the district; to acquire, purchase, operate, and maintain pumps, plants, and pumping systems for drainage purposes; and to construct, operate, and maintain irrigation works and machinery in connection with the purposes herein set forth.
(7) To build and construct any other works and improvements deemed necessary to preserve and maintain the works in or out of the district; to acquire, construct, operate, maintain, use, sell convey, transfer, or otherwise provide for machines and equipment for any purpose authorized by this act or chapter 298, Florida Statutes; and to contract for the purchase, construction, operation, maintenance, use, sale, conveyance, and transfer of said machinery and equipment.
(9) To hold, control, and acquire by donation, purchase, or condemnation, any easement, reservation, or dedication in the district, for any of the purposes herein provided. To condemn as provided by chapters 73 and 74, Florida Statutes, or acquire, by purchase or grant for use in the district, any land or property within the district necessary for the purposes of this act.
(21) To own, acquire, construct, reconstruct, equip, operate, maintain, extend, and improve water systems and sewer systems or combined water and sewer systems; to regulate the use of sewers and the supply of water within the district and to prohibit or regulate the use and maintenance of outhouses, privies, septic tanks, or other sanitary structures or appliances within the district; to prescribe methods of pretreatment of wastes not amenable to treatment with domestic sewage before accepting such wastes for treatment and to refuse to accept such wastes when not sufficiently pretreated as may be prescribed, and to prescribe penalties for the refusal of any person or corporation to so pretreat such wastes; to sell or otherwise dispose of the effluent, sludge, or other byproducts as a result of sewage treatment; and to construct and operate connecting, intercepting, or outlet sewers and sewer mains and pipes and water mains, conduits, or pipelines in, along, or under any street, alleys, highways, or other public places or ways within or without the district, when deemed necessary or desirable by the board. The plans for any water or sewer system shall be subject to the approval of the State Board of Health.
(22) To own, acquire, construct, operate, and maintain parks and facilities for indoor and outdoor recreation, cultural, and educational uses including buildings and equipment for such uses, playgrounds, picnic grounds, camping facilities, and water recreation facilities within or without the district."
As is the case with the more general statutory provisions, these powers must be exercised in such a manner as to accomplish the duties and responsibilities imposed on the Spring Lake Improvement District by the Legislature relating to drainage and water control within the district's jurisdictional boundaries. As section 298.22, Florida Statutes, specifically provides, "[t]he board of supervisors of the district has full power and authority to construct, complete, operate, maintain, repair, and replace any and all works and improvements necessary to execute the water control plan." The powers of water control district supervisors must be exercised within the scope of this legislative directive.
As a statutorily created entity, a water control district may only exercise such powers as have been expressly granted by statute or must necessarily be exercised in order to carry out an express power. Any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[5] The implied powers accorded administrative agencies must be indispensable to powers expressly granted, that is, those powers that are necessarily or fairly or reasonably implied as an incident to those powers.[6]
The types of recreational facilities described in section 10(22), Chapter 2005-342, Laws of Florida, appear to be minimally managed and maintained, nature-oriented facilities and activities. A multi-use golf course facility with such clearly commercial components as a restaurant, bar and other unspecified businesses would appear to be more in the nature of a commercial venture than a park or recreational facility within the scope of the district's mandate. While I recognize the authority of the district "[t]o own . . . operate, and maintain parks and facilities for indoor and outdoor recreation," these specific powers must be exercised to accomplish the purposes of the district with regard to the water control plan.
Further, your letter indicates that "the [Spring Lake Improvement] District water control plan was never entirely completed." The Legislature has mandated that "[b]y October 1, 2000, the board of supervisors of each water control district must develop or revise the district's water control plan to reflect the minimum applicable requirements set forth in [section 298.22(3), Florida Statutes]."[7]
The minimum requirements the water control plan must contain include:
"(a) Narrative descriptions of the statutory responsibilities and powers of the water control district.
(b) A map delineating the legal boundary of the water control district and identifying any subdistricts or units within the district.
(c) Narrative descriptions of land use within the district and all existing district facilities and their purpose and function, and a map depicting their locations.
(d) Engineering drawings and narrative sufficient to describe each facility's capacity for the management and storage of surface waters and potable water supply, if applicable.
(e) A description of any environmental or water quality program that the water control district has implemented or plans to implement.
(f) A map and narrative description of any area outside the water control district's legal boundary for which the district provides services.
(g) Detailed descriptions of facilities and services that the water control district plans to provide within 5 years.
(h) A description of the administrative structure of the water control district."
This plan must be submitted to the jurisdictional water management district for review and to determine consistency with the applicable water resource plans and policies. Changes to the plan may be suggested and additional information may be requested. A copy of the final water control plan must be filed with the jurisdictional water management district and with each local general purpose government within which district property is located.[8]
In the absence of an adopted water control plan which complies with the statutory directive in section 298.225(3), Florida Statutes, the Spring Lake Improvement District may not justify the use of district moneys for the purchase of a golf course facility by asserting that such purchase would accomplish the purposes of the district with regard to the water control plan.
In sum, in light of the absence of an adopted water control plan and considering the requirement that the powers of the district are limited to accomplishing water control district purposes, it is my opinion that the Spring Lake Improvement District is not authorized to purchase a multi-use golf course facility located within the district that includes a driving range, restaurant, bar, sewer plant, and related businesses.
Questions Two and Three
In light of my response to Question One, no discussion of your second and third questions is necessary.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See Title, Ch. 71-669, Laws of Fla.
[2] Id.
[3] See s. 1, Ch. 2005-342, Laws of Fla.
[4] Section 1, Ch. 2005-238, Laws of Fla. Prior to this amendment, s.298.22(3), Fla. Stat. (2004), authorized the district's supervisors to "build and construct any other works and improvements deemed necessary to preserve and maintain the works in or out of said district; acquire, construct, operate, maintain, use, sell, convey, transfer or otherwise provide for pumping stations, including pumping machinery, motive equipment, electric lines and all appurtenant or auxiliary machines, devices or equipment."
[5] See Halifax Drainage District of Volusia County v. State,185 So. 123, 129 (Fla. 1938); State ex rel. Greenberg v. Florida StateBoard of Dentistry, 297 So. 2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., ofFlorida, 281 So. 2d 493 (Fla. 1973). And see, e.g., Ops. Att'y Gen. Fla. 02-30 (2002) and 04-48 (2004).
[6] See, e.g., Gardinier, Inc. v. Florida Department of PollutionControl, 300 So. 2d 75, 76 (Fla. 1st DCA 1974); Williams v. Florida RealEstate Commission, 232 So. 2d 239, 240 (Fla. 4th DCA 1970).
[7] Section 298.225(2), Fla. Stat.
[8] Section 298.225(5), Fla. Stat.