OWEN, WILLIAM C., Jr., (Retired) Associate Judge.
The principal issue on this appeal is whether a water control district created under and governed by Chapter 298, Florida Statutes (1981), properly denied a landowner permission to build a bridge over the district’s canal. We hold that the power of a district to deny a bridge permit can only be based on a finding that the proposed bridge would obstruct the water flow in the canals or otherwise threaten the effectiveness of the canals. Accordingly, we reverse and remand with directions.
The appellant Roach, a landowner who owns property abutting the appellee Loxa-hatchee Groves Water Control District (the District), desiring to bridge one of the District’s canals in order to gain access to a public road, “F” Street,[1] submitted an application to the District for permission to build a culvert or bridge and requested the information he would need to design a bridge compatible with the District’s water management plan. After several communications, Roach was informed that the District had, on March 12, 1979, adopted a policy of prohibiting new culverts and of prohibiting bridges that would restrict water flow in the canals. The District, however, failed to provide more specific information concerning the amount of water flow contemplated and the type or types of bridges that would be compatible with its plan.
In due course, the District held a public hearing on Roach’s application. The board considered a report prepared by the District staff and engineer. The report recommended denial of permission for a number of reasons including the fact that Roach had failed to provide construction plans.[2] *816 Other than considering the report, the board did not address the question of whether Roach’s proposed bridge would interfere with the water flow in the District’s canals. The only evidence on that issue was the statement by Roach’s attorney that Roach would construct the bridge in compliance with any conditions, any specifications, and any limitations the board would provide. The focus of the hearing concerned Roach’s proposed use of his property, the traffic impact, and the economic impact on the residents who live within the District boundaries. At the conclusion of the hearing, the board voted to deny the application. On December 8, 1981, the board rendered a written order denying the application for the reason that, “The issuance of a bridge permit would not be in the best interests of the District, its landowners and taxpayers.”
The Legislature, in providing for the organization of water control districts (then commonly known as drainage districts) by the enactment of a general law now codified as Chapter 298, Florida Statutes (1981), conferred certain limited powers on these statutory creatures for the purpose of reclaiming and draining swamps and overflowed lands. See Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234, 239 (1944); Palm Beach County v. South Florida Conservancy District, 126 Fla. 170, 170 So. 630 (1936). The management of each district is by a board of supervisors. Because the districts are creatures of statute, each board of supervisors must look entirely to the statute for its authority. State ex rel. Davis v. Jumper Creek Drainage District, 153 Fla. 451, 14 So.2d 900, 901 (1943). The law is well-settled that drainage districts have only those powers which the Legislature has delegated by statute. Forbes Pioneer Boat Line v. Board of Commissioners, 77 Fla. 742, 82 So. 346 (1919) (no power to collect tolls); State ex rel. Vans Agnew v. Johnson, 112 Fla. 7, 150 So. 111, 112 (1933); Halifax Drainage District of Volusia County v. State, 134 Fla. 471, 185 So. 123, 129 (1938) (only limited taxing power); State ex rel. Davis v. Jumper Creek Drainage District, 153 Fla. 451, 14 So.2d 900, 901 (1943); Rabin v. Lake Worth Drainage District, 82 So.2d 353, 355 (Fla.1955), cert, denied, 350 U.S. 958, 76 S.Ct. 348, 100 L.Ed. 833 (1956); see generally 20 Fla.Jur.2d Drains & Sewers § 6 (1980).
The appellee District, in the present case, has asserted that the Legislature conferred general police powers on water control or drainage districts. To support this assertion, the appellee relies on certain language that was contained in Section 298.01(1), Florida Statutes (1979). That provision provided that drainage districts could be formed “for the purpose of preserving and protecting water resources, for sanitary and agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit, by drainage, irrigation, or water management.” (emphasis added). The ap-pellee asserts that the emphasized portion constitutes a grant of general police powers.
The appellee’s argument is flawed for numerous reasons. First, to the extent that the Legislature allowed drainage districts to conduct activities conducive to public health, convenience or welfare, those activities are explicitly limited to “drainage, irrigation, or water management.” Thus, contrary to the appellee’s assertions the quoted language does not evidence a legislative intent to confer general police powers. Second, the section relied upon merely regulated the formation of districts, not their powers. The particular language relied upon was deleted effective July 1,1980, when the Legislature amended the statute and changed the rules regarding formation of districts. See Ch. 80-281, §§ 1 and 14, Laws of Fla. Third, the amendment deleting the quoted language became effective prior to the denial of appellant Roach’s application. Thus, even if one could construe the quoted language as evidence of legislative intent to confer general police powers, one would have to conclude that *817 the Legislature withdrew those powers as of July 1, 1980. Finally, the delegation of unlimited legislative police powers to a water control district without greater guidelines than exist in the present statute would probably be unconstitutional in violation of the Florida nondelegation doctrine. See, e.g., Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978).
The District also relies on Section 298.-22(5), Florida Statutes (1981), which gives the District the power to own property. We note, however, that power is granted for the limited purpose of allowing the District “to effect the drainage, protection and reclamation of the land in the district ... . ” § 298.22, Fla.Stat. (1981). Thus, the legislative grant of power is limited to that reasonably necessary to accomplish the goals for which water control districts were brought into existence: drainage, protection, and reclamation of swamps and low lying lands.
Having determined that water control districts do not have general police powers but only those powers delegated by statute, we look to Sections 298.001 to 298.-78, Florida Statutes (1981). Section 298.24 is the principal provision that governs bridge construction. It provides in part as follows:
All bridges contemplated by this chapter and all enlargements of bridges already in existence shall be built and enlarged according to and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district. .. . Any owner of land, within or without the district, may, at his own expense, and in compliance with the terms and provision of this chapter, construct a bridge across any drain, ditch, canal or excavation in or out of said district.
§ 298.24, Fla.Stat. (1981). Although this section is not a model of clarity, we believe the Legislature intended to confer a right on landowners to build bridges across drainage canals. The Legislature, however, did not confer an unconditional right; landowner bridges must be built so as not to obstruct or destroy canals. § 298.66, Fla. Stat. (1981). Thus, a landowner must construct the bridge so that it will not interfere with the district’s drainage or reclamation plan by obstructing the water flow in the canals or otherwise impairing the effectiveness of the canals. Moreover, the quoted passage indicates that landowner must seek approval of bridge construction plans by the district’s chief engineer. The engineer, however, has no right to refuse to allow a landowner to build a bridge. The engineer may only require that the landowner build a bridge that will not obstruct the water flow in the canals or otherwise damage the effectiveness of the canals. If the district wishes to be more specific in its requirements, the district engineer should then provide the landowner with sufficiently detailed requirements as would reasonably allow the landowner to design and construct a bridge compatible with the district’s water management plan.
In the present case, the appellant’s application for a bridge permit was refused on the ground that, “The issuance of a bridge permit would not be in the best interests of the District, its landowners and taxpayers.” The board had no power to refuse permission on that broad ground. At most, the board had the power to refuse permission on the ground that the chief engineer, for good reason as above set out, had failed to approve the construction plans.
As we noted above, the district notified Roach only that bridges cannot interfere with the water flow in the canals and that bridges cannot be in the form of a culvert. His application for a bridge permit should be reconsidered to determine whether the proposed bridge meets those requirements. If so, the district should issue the permit. If not, the district may again deny the requested permit upon a finding that the proposed bridge would obstruct the water flow in the canals or otherwise threaten the effectiveness of the canals.
The order is reversed and this matter remanded to the agency for further pro *818 ceedings consistent with this court’s opinion.
REVERSED AND REMANDED.
HERSEY and GLICKSTEIN, JJ., concur.

. We note that a notarized surveyor’s report, attached as part of the record, states that the road was dedicated to the public on June 4, 1925. In addition, the District concedes that the road is open to the residents of the District. We assume, without deciding, that the District was formerly known as the Loxahatchee Drainage District and that the District has the power to maintain the road because of a special law conferring that power. See Ch. 76-455, §§ 1-4, Laws of Fla.; § 298.76(l)(d), Fla.Stat. (1981). The power to maintain, however, does not allow the District to discriminate against non-district residents.

. The staff report cited the following reasons for denying permission: (1) Roach had not supplied a traffic study, (2) Roach failed to furnish construction plans [but the appellee conceded at oral argument that Roach’s position was that he would construct the bridge to any specifications the District would supply], (3) Roach’s proposed use of his property is vague, (4) Roach failed to submit a plan for contributing to the maintenance of “F” Street, (5) Roach failed to agree to acquire right-of-ways and to upgrade the quality of “F” Street, (6) Roach failed to submit a satisfactory plan to hold the District harmless for any claims or damages, (7) the roads in the District could not support additional traffic, (8) Roach’s property lies outside the District and he could obtain an alternative means of access outside the District, (9) *816 Roach’s use of the road would burden the taxpayers in the District, and (10) Roach might violate county zoning requirements by obtaining access to “F” Street.