Mr. James P. Beadle Attorney for the Melbourne-Tillman Water Control District 5205 Babcock Street, Northeast Palm Bay, Florida 32905
Dear Mr. Beadle:
On behalf of the Board of Directors of the Melbourne-Tillman Water Control District, you ask substantially the following questions:
1. Is the Melbourne-Tillman Water Control District authorized to open and develop district property for recreational purposes?
2. Does Chapter 298, Florida Statutes, apply to water control districts created by special act?
In sum:
1. The Melbourne-Tillman Water Control District is authorized to open and develop district property for passive recreational purposes such as trails, provided the board of directors of the district determines that such use is appropriate for the environmental protection or conservation of the district's natural resources.
2. Certain provisions in Chapter 298, Florida Statutes, are specifically made applicable to water control districts created by special act, such as the Melbourne-Tillman Water Control District, and such provisions would apply to the extent there is no conflict with the district's enabling legislation.
Question One
According to your letter, the board of directors of the Melbourne-Tillman Water Control District (district) has been approached by two groups seeking to use district property for recreational purposes.[1] In light of the district's duties prescribed by the special act creating it, however, you question whether the district has the authority to utilize its property in this manner.
The district was created by special act as a dependent special district to "secure, operate, and maintain an adequate, dependable, surface water management system within the boundaries" of the district.[2] In order to accomplish this, the district board of directors is authorized to establish a water management system that will accomplish the following objectives:
"(a) Prevent damage from flood, soil erosion, and excessive drainage.
(b) Promote the conservation, development, and proper utilization of surface and ground water.
(c) Preserve natural resources, fish and wildlife.
(d) Maintain water quality in the District and the receiving waters from the District.
(e) Preserve and protect the natural systems in the District, Turkey Creek, the Indian River, and the St. Johns River.
(f) Purchase and establish conservation areas and passiverecreation areas to protect the natural resources, including the sloughs, wetlands, and natural areas, which exist in the District or along the receiving waters, where the District finds it isappropriate for environmental protection or conservation of thenatural resources. The District shall utilize the best management practices in implementing and operating its water management system."[3] (e.s.)
You note that the courts of this state, as well as this office, have repeatedly stated that special districts possess only such powers as have been expressly granted by law or are necessarily implied to carry out an express power or duty.[4] The district's special act, however, specifically provides that one of the objectives to be accomplished by the water management system developed by the district is the establishment of passive recreational areas when the district finds it appropriate for environmental protection or conservation.
The term "passive recreation" is not defined by statute, and a review of existing case law fails to provide a precise definition. The Department of Environmental Protection has advised this office that the term has been variously defined.[5] In seeking to determine what activities may qualify as passive recreation, however, consideration of such factors as the degree of physical engagement involved in the activity or whether the facility is resource-based as opposed to user-oriented would appear to be relevant. For purposes of prescribing recreational uses appropriate to Florida's Cross Florida Greenways State Recreation and Conservation Area, "resource-based activities" are defined as "dependent on some particular element or combination of elements in the natural or cultural environment and include such activities as fishing, camping, hunting, boating, bicycling, nature study, horseback riding, visiting historical sites, and hiking."[6]
The establishment of a trail for such activities as walking or bicycling would appear to qualify as a passive recreational use of district lands. Walking and bicycling are pastimes that should have no adverse impact on a site and may generally be conducted in a manner compatible with natural resource protection. Thus, the special act for the district appears to authorize the creation of such recreational uses, provided that the district determines such use is appropriate for environmental protection or the conservation of the natural resources.
In addition, Chapter 260, Florida Statutes, constitutes the "Florida Greenways and Trails Act." Section 260.012, Florida Statutes, states that it is the intent of the Legislature to encourage the development of greenways and trails by counties, cities and special districts and "all counties, municipalities, and special districts of this state [are] authorized to spend public funds for such purposes[.]"[7] Among the powers of the Department of Environmental Protection under the act is the authority to "[e]stablish, develop, and publicize greenways and trails in a manner that will permit public recreation when appropriate without damaging natural resources."[8] Title to the property need not be transferred to the department. Pursuant to section 260.015(2)(a), the Florida Greenways and Trails Council, located within the department, is authorized to accept easements, licenses and other agreements that would facilitate the establishment of a statewide system of greenways and trails.
Accordingly, I am of the view that the Melbourne-Tillman Water Control District is authorized to open and develop district property for passive recreational purposes such as trails, provided the board of directors of the district determines that such use is appropriate for the environmental protection or conservation of the natural resources.
Question Two
Chapter 298, Florida Statutes, provides for water control and drainage. Section 298.01, Florida Statutes, provides:
"It is the legislative intent that those water control districts established prior to July 1, 1980, pursuant to the process formerly contained in ss. 298.01, 298.02, and 298.03, may continue to operate as outlined in this chapter. However, on and after that date, no water control district may be created except pursuant to s. 125.01 or a special act of the Legislature. Upon formation of a water control district by a special act of the Legislature, the circuit court of the county in which a majority of the land within the district is located shall thereafter maintain and have original and exclusive jurisdiction, coextensive with the boundaries and limits of the water control district without regard to county lines, for all purposes of this chapter."
While some special acts creating water control districts state that the provisions of Chapter 298, Florida Statutes, apply, the special act creating the Melbourne-Tillman Water Control District is silent regarding the applicability of Chapter 298.[9]
Various parts of Chapter 298 indicate their application to water control districts created by special act.[10] For example, section298.11(1), Florida Statutes, states that within twenty days after the effective date of the special act creating a district, notice of a landowners' meeting shall be given as provided in the special act for the purpose of electing a board of three supervisors. In this instance, however, the special act creating the district contains specific directions for the appointment of seven directors, three appointed by the Brevard County Commission, three appointed by the City of Palm Bay, and one appointed by the City of West Melbourne.[11] Consistent with the general rules of statutory construction that a special act will control over the provisions of a general law, appointment of the district's board of directors would be controlled by the special act.[12]
Section 298.225, Florida Statutes, requires the board of supervisors of each water control district, by October 1, 2000, to develop or revise the district's water control plan to reflect minimum requirements set forth in the chapter.[13] This section specifically states that "any plan of reclamation, water management plan, or plan of improvement developed and implemented by a water control district created by this chapter or by specialact of the Legislature is considered a `water control plan' for purposes of this chapter."[14] (e.s.) The requirement imposed by section 298.225 on districts created by special acts was added to Chapter 298 after the creation of the Melbourne-Tillman Water Control District. Nothing in the special act creating the district or in the general law would appear to exempt it from this requirement.[15]
Accordingly, it is my opinion that the Melbourne-Tillman Water Control District is subject to provisions in Chapter 298, Florida Statutes, made specifically applicable to water control districts created by special act, to the extent such provisions do not conflict with the special act creating the district.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] You state that one group wishes to develop and open a portion of the C-1 canal right of way for a linear park/recreation trail on both the north and south sides of the canal. The "trail/park" would be financed by grants applied for in partnership with the City of Palm Bay. The second group wishes to clear an area on the south side of the C-1 canal and open the area as a trail. According to your letter, this area is "apparently being utilized by the public without the imprimatur of the District."
[2] See, Ch. 86-418, Laws of Florida, as amended by Chs. 90-401, 91-341, 92-239, and 94-424, Laws of Florida.
[3] See, s. 8, Ch. 86-418, supra.
[4] See, e.g., Halifax Drainage District of Volusia County v.State, 185 So. 123 (Fla. 1938); Roach v. Loxahatchee Groves WaterControl District, 417 So.2d 814 (Fla. 4th DCA 1982); Ops. Att'y Gen. Fla. 85-43 (1985), 96-66 (1996), and 98-20 (1998).
[5] The Department of Environmental Protection has advised this office that various communities define the term in different ways. For example, one city considers a park which does not have facilities installed or requires facilities maintenance is a park offering passive recreation. Another town classifies passive recreation parks as those offering picnicking, trails, and open space, but not managed for organized sports. One county considers passive recreation as any pastime which has no adverse impacts on a site and is generally conducted in a way to be compatible with natural and/or cultural resource protection. Included in such a definition are low impact camping, horseback riding, fishing, hiking, and swimming.
[6] Section 253.7825, Fla. Stat., also defines "user-oriented activities" as "those which can be provided in a variety of locations and include such activities as golf, tennis, baseball, archery, target shooting, and playground activities."
[7] See, s. 260.012(2) and (5), Fla. Stat.
[8] Section 260.016(1)(e), Fla. Stat.
[9] See, e.g., North Lauderdale Water Control District was created by Ch. 63-661, Laws of Florida, and specifically made subject to Ch. 298, Fla. Stat., in subsection 2 of the act.
[10] See, e.g., s. 298.63, Fla. Stat. (all districts in the state, whether existing under authority of general law or special enactment, may issue bonds to enable such districts to comply with federal requirements for federal loans to drainage and levee districts); and s. 298.70, Fla. Stat. (Department of Environmental Protection authorized to borrow money to continue projects the department deems advantageous to the territory within "any district established or that may be established in this state).
[11] Section 4, Ch. 86-418, Laws of Florida.
[12] See, e.g., Rowe v. Pinellas Sports Authority, 461 So.2d 72
(Fla. 1984); Loxahatchee River Environmental Control District v.Mann, 403 So.2d 363 (Fla. 1981).
[13] Section 298.225(2), Fla. Stat. See also, s. 298.225(3), Fla. Stat., prescribing the minimum requirements to be embodied in a water control plan for a district.
[14] Section 298.225(1), Fla. Stat.
[15] See, s. 7, Ch. 97-40, Laws of Florida, creating s. 298.225, Fla. Stat., effective May 1, 1997.