Mr. Lewis W. Fishman General Counsel, Lower Florida Keys Hospital District Two Datran Center, Suite 1121 9130 South Dadeland Boulevard Miami, Florida 33156
Dear Mr. Fishman:
On behalf of the Lower Florida Keys Hospital District's Board of Commissioners, you ask substantially the following question:
Does the Lower Florida Keys Hospital District have the authority under its enabling legislation to grant or loan funds to a nonprofit corporation for the purpose of establishing a self-insurance plan that will sell or make available health insurance to residents of Monroe County?
During the 2004 legislative session, the Florida Legislature established a pilot program for Monroe County for the creation of a self-insurance plan available to county residents. As stated in section 47(1), Chapter 04-305, Laws of Florida,
"The Legislature has determined that insurers and managed care organizations are unable to provide adequate or affordable health insurance coverage in rural counties and other isolated areas of the state. It is therefore necessary to explore alternatives for making affordable health insurance coverage available in rural counties and other similar areas of the state."
Thus the Legislature in section 47(2) of Chapter 04-305, Laws of Florida, created a program whereby the rural health network in Monroe County would establish a nonprofit corporation to create a self-insurance plan, approved by the Office of Insurance Regulation, to provide health insurance coverage for the residents of the county who are unable to obtain adequate or affordable health insurance. Premiums charged by the plan for participating residents or employers are to be actuarially sound.[1]
According to your letter, the Rural Health Network of Monroe County, Florida, Inc., is in the process of forming a nonprofit corporation that will create such a health insurance plan and make it available to the employers and residents of Monroe County. The Rural Health Network of Monroe County, Florida, Inc., has submitted a request to the Board of Commissioners of the Lower Florida Keys Hospital District (district) for a loan or grant to start up this program. The district, however, is concerned as to whether its enabling legislation permits such an expenditure, and you have advised this office that it is your opinion that such an expenditure is not permissible under the current provisions of the district's charter.
The Lower Florida Keys Hospital District was created and incorporated as a special taxing district in Monroe County by special act to provide health care to residents of the district.[2] In 2003, the Legislature codified all prior special acts relating to the district into a single act.[3] Section 6 of the district's charter provides:
"The board is authorized to establish, construct, lease, operate, and maintain a hospital or hospitals, medical facilities, and other health care related facilities and services as in its opinion shall be necessary for the use of the people of the district. Said hospital or hospitals, medical facilities, and other health care related facilities and services shall be established, constructed, leased, operated, and maintained by the board for the preservation of the public health, for the public good, and for the use of the public of the district, and maintenance of such hospital or hospitals, medical facilities, or other health care related facilities and services within the district is hereby found and declared to be a public purpose and necessary for the preservation of the public health and welfare of the district and inhabitants thereof. The board may enter into contractual relationships with other health service organizations, either public or private, for the provision of such administrative and medical services as it does not on its own provide in connection with said hospital or hospitals, medical facilities, or other health care related facilities and services. . . ."
The board is further authorized to establish a training school for nurses and other health care related professionals and to establish and operate a nursing home, ambulance service and such other services related to the operation and maintenance of a hospital, medical facility, or other health care related facility in a manner provided by law.[4] In addition, the board may establish, maintain or participate in "such programs and projects of and for medical research, education, and development affecting human physical or mental health and well-being as it may deem desirable."[5]
The courts of this state, as well as this office, have recognized that special districts possess only such powers and authority as have been expressly granted or necessarily implied therefrom in order to carry out an expressly granted power.[6] As statutory entities, therefore, special districts such as the Lower Florida Keys Hospital District possess no inherent power to act beyond those powers which their enabling legislation expressly or by necessary implication bestows upon them.
While the district is authorized to provide health insurance for its officers and employees pursuant to section 112.08, Florida Statutes,[7] nothing in the district's enabling legislation refers to the provision of health insurance to the residents of the county. While the special act refers to health care services, such a term would not appear to encompass the provision of insurance. The term is not defined in the district's enabling legislation; however, the term is defined elsewhere in the Florida Statutes. For example, section 641.47(11), Florida Statutes, defines the term to mean "comprehensive health care services, as defined in s. 641.19, when applicable to a health maintenance organization, and means basic services, as defined in s. 641.402, when applicable to a prepaid health clinic." Section 641.19(4) defines comprehensive health care services as:
"services, medical equipment, and supplies furnished by a provider, which may include, but which are not limited to, medical, surgical, and dental care; psychological, optometric, optic, chiropractic, podiatric, nursing, physical therapy, and pharmaceutical services; health education, preventive medical, rehabilitative, and home health services; inpatient and outpatient hospital services; extended care; nursing home care; convalescent institutional care; technical and professional clinical pathology laboratory services; laboratory and ambulance services; appliances, drugs, medicines, and supplies; and any other care, service, or treatment of disease, or correction of defects for human beings."
Basic services are defined in section 641.402, Florida Statutes, as "emergency care, physician care other than hospital inpatient physician services, ambulatory diagnostic treatment, and preventive health care services." Section 631.814(6), Florida Statutes, defines "health care services" for purposes of the Florida Health Maintenance Organization Consumer Assistance Plan to mean comprehensive health care services as defined in s.641.19.
Therefore, provision of health insurance would appear to be distinct from the provision of health care services. The former is a form of insurance coverage whereby one undertakes to indemnify another or pay or allow a specified amount or determinable benefit for the provision of health care services,[8] while the latter relates to health care services offered by medical providers and medical facilities. While the Legislature has authorized the rural health care network to establish a pilot program, you have advised this office that there is no statutory or contractual obligation between the network and the hospital district. Nor do the provisions of Chapter 04-305, Laws of Florida, provide for or mandate such funding. The act merely provides that the premiums charged by the self-insurance plan for participating residents or employers shall be actuarially sound.
While clearly the provision of health insurance to the citizens within Monroe County is a concern of the Florida Legislature, it does not appear that the enabling legislation for the Lower Florida Keys Hospital District authorizes the expenditure of district funds for the provision of health insurance or that the provisions of Chapter 04-305, Laws of Florida, alter or amend the special district's powers. The Florida Legislature, however, may wish to clarify its intent on this matter.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 47(2), Ch. 04-305, Laws of Fla., providing:
"An entity in Monroe county, established pursuant to section381.0406, Florida Statutes, may, through a nonprofit corporation, establish a self-insurance plan approved by the Office of Insurance Regulation in accordance with section 112.08(2)(b), Florida Statutes, to insure residents of a rural county or similar area if the residents are unable to obtain adequate or affordable health insurance coverage. Premiums charged by the self-insurance plan for participating residents or employers shall be actuarially sound. In reviewing such a self-insurance plan, the office shall consult with the Department of Health to confirm that the program is consistent with the purpose and scope of chapter 381, Florida Statutes."
And see s. 381.0406, Fla. Stat., providing for the establishment of rural health networks as a means of increasing access to health care in rural areas. Rural health network is defined as "a nonprofit legal entity, consisting of rural and urban health care providers and others, that is organized to plan and deliver health care services on a cooperative basis in a rural area, except for some secondary and tertiary care services."
See s. 381.0406(2)(c), Fla. Stat. While the term "health care provider" includes public entities providing health care, see s.381.0406(2)(b), Fla. Stat., you have advised this office that the district has no legal ties or obligation to the Rural Health Network of Monroe County, Florida, Inc.
[2] See s. 1, Ch. 67-1724, Laws of Fla., as amended.
[3] See Ch. 03-307, Laws of Fla. And see s. 189.429, Fla. Stat., providing for the codification of special acts of special districts.
[4] See s. 8 of the district's charter, s. 3(8), Ch. 03-307, Laws of Fla.
[5] See s. 9 of the district's charter, s. 3(9), Ch. 03-307, Laws of Fla.
[6] See, e.g., Forbes Pioneer Boat Line v. Board ofCommissioners of Everglades Drainage District, 82 So. 346 (Fla. 1919); Op. Att'y Gen. Fla. 89-34 (1989); Halifax DrainageDistrict of Volusia County v. State, 185 So. 123 (Fla. 1938);Roach v. Loxahatchee Groves Water Control District, 417 So.2d 814
(Fla. 4th DCA 1982); Ops. Att'y Gen. Fla. 85-43 (1985), 96-66 (1996), 98-20 (1998) and 04-26 (2004).
[7] See s. 112.08(2)(a), Fla. Stat., providing in part:
"Every local governmental unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance."
Section 112.08(1), Fla. Stat., defines "local governmental unit" to mean "any county, municipality, community college district, school board, or special district or any county officer listed in s. 1(d), Art. VIII of the State Constitution."
[8] See generally s. 624.02, Fla. Stat., defining "Insurance" for purposes of the Insurance Code as "a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies."