Dear Mr. Nielander:
You ask on behalf of the Board of Supervisors of the Spring Lake Improvement District substantially the following question:
Is the Board of Supervisors of the Spring Lake Improvement District statutorily authorized under Chapter 2005-342, Laws of Florida, or Chapter 298,[1] Florida Statutes, to use district funds for the control of arthropods?
In sum:
The Board of Supervisors of the Spring Lake Improvement District does not appear to be statutorily authorized under Chapter 2005-342, Laws of Florida, or Chapter 298, Florida Statutes, to use district funds for the control of arthropods.
According to your letter, the Spring Lake Improvement District initiated mosquito spraying in 1980 and has owned and operated mosquito control equipment and supplies since that time. Recently, however, outside counsel for the district advised the board of supervisors for the district that in light of the district's enabling legislation, the district did not have the authority to assess and conduct mosquito control. The board of supervisors, therefore, has requested this office's opinion on this issue.
You have not identified the types of expenditures in question; therefore, any comments must be general in nature. Moreover, this office cannot pass upon the validity of actions previously taken by a public body, nor can this office validate any such action taken. Accordingly, this office will not comment upon the past actions of the Spring Lake Improvement District in utilizing district funds to provide for the control of arthropods, but rather is expressly limited to a consideration of the requirements of, and the authority granted by, the existing statutes which relate to the special district.
The Spring Lake Improvement District (district) was created by Chapter 71-669, Laws of Florida, [2] and authorized to exercise the powers conferred upon drainage and water control districts by Chapter 298, Florida Statutes.[3] In 2005, pursuant to a legislative mandate, all of the special acts relating to the district were codified, in order to provide a single, comprehensive special act charter for the district, which included all current legislative authority granted to the district by its several legislative enactments and any additional authority granted by the act.[4] Section 3 of Chapter 2005-342, Laws of Florida, in codifying the special acts, authorizes the district to exercise any and all other powers conferred upon drainage districts by Chapter 298, Florida Statutes.[5] The special act authorizes the board of supervisors, as the governing body for the district, to access and impose an ad valorem tax, an annual drainage tax, and a maintenance tax as provided therein.[6]
As a statutorily created entity, the district may only exercise such powers as have been expressly granted by statute or must necessarily be exercised in order to carry out an express power.[7] Moreover, any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[8]
A review of the enabling legislation for the district, as well as Chapter 298, Florida Statutes, failed to reveal a provision authorizing the expenditure of district funds for arthropod control. Section 298.22, Florida Statutes, in setting forth the powers of the board of supervisors of a water control district, provides that the board "has full power and authority to construct, complete, operate, maintain, repair, and replace any and all works and improvements necessary to execute the water control plan[,]" which is defined as
"the comprehensive operational document that describes the activities and improvements to be conducted by a water control district authorized under this chapter and includes any district "plan of reclamation," "water management plan," or "plan of improvement" that details the system of water management improvements implemented by a water control district."[9]
Similarly, the charter for the district relates to the implementation of a water control plan and the improvement and maintenance of water and sewer systems.[10] While the charter does authorize the district to expend funds for other purposes such as roads, parks and recreational facilities, and street lighting, there is no provision for the control of arthropods.[11]
You refer to the minutes for a meeting of the board of supervisors for April 15, 1980, which indicate that a motion was passed "to approve Spring Lake as a Mosquito Control District."[12] You also refer to the provisions of section 388.031, Florida Statutes (1979), as providing a possible basis for such action. That statute provided for a petition signed by not less than 15 percent of the registered electors of the territory to be submitted to the board of county commissioners for the creation of a mosquito control district.[13]
Pursuant to section 388.041, Florida Statutes (1979), the board of county commissioners was required to determine the feasibility of creating such a district, and pursuant to section 388.051, Florida Statutes (1979), to submit the issue of creating such a district to the electorate for approval.[14] This office has no information that such a procedure was utilized. In the absence of statutory authorization, however, a special district would not possess the authority to amend the terms of its enabling legislation.[15]
Moreover, the Legislature in 2010 enacted Chapter 10-266, Laws of Florida, which sought to amend the district's enabling legislation to specifically authorize the district to provide arthropod control.[16] The act, however, was contingent upon approval by the electorate of the district.[17] It appears that the act failed to gain the approval of the electorate at the general election in November, 2010.[18]
Accordingly, in light of the above, the Board of Supervisors of the Spring Lake Improvement District does not appear to be statutorily authorized under Chapter 2005-342, Laws of Florida, or Chapter 298, Florida Statutes, to use district funds for the control of arthropods.
Sincerely,
 Pam Bondi Attorney General
PB/tjw
[1] While your letter referred to Ch. 289, Fla. Stat., it appears that you intended to refer to Ch. 298, Fla. Stat.
[2] As this office noted in Attorney General Opinion 09-13 (2009), the Spring Lake Drainage District was created pursuant to Ch. 298, Fla. Stat. The name of the district was changed to the Spring Lake Improvement District by Ch. 71-669, Laws of Fla., which broadened the scope of the powers and duties of the district as they related to the construction of roads and highways, drainage and water control systems, water and sewage facilities, and recreational facilities. And see Chs. 77-563, 88-461, and 90-434, Laws of Fla., which subsequently amended Ch. 71-669, Laws of Fla.
[3] See s. 9(24), Ch. 71-669, Laws of Fla.
[4] Section 1, Ch. 2005-342, Laws of Fla.
[5] See s. 10(27) of the district charter, as amended by s. 3, Ch. 2005-342, Laws of Fla. Butsee s. 4, Ch. 2005-342, Laws of Fla., stating that while the provisions of Ch. 298, Fla. Stat., are applicable to the district to the extent not inconsistent with the special act with the exception of certain enumerated sections of Ch. 298, Fla. Stat. Cf. s. 298.01, Fla. Stat., stating that it is the legislative intent that those water control districts established prior to July 1, 1980, pursuant to the process formerly continued in ss. 298.01, 298.02, and 298.03, may continue to operate as outlined in Ch. 298, Fla. Stat.
[6] See s. 10(10) of the district charter as provided in s. 3, Ch. 2005-342, Laws of Fla. And see s. 17 of the charter providing for the assessment of land for reclamation.
[7] See Forbes Pioneer Boat Line v. Board of Commissioners ofEverglades Drainage District, 82 So. 346 (Fla. 1919); HalifaxDrainage District of Volusia County v. State,185 So. 123, 129 (Fla. 1938); State ex rel. Davis v. Jumper CreekDrainage District,153 Fla. 451, 14 So. 2d 900, 901 (1943) (because the districts are creatures of statute, each board of supervisors must look entirely to the statute for its authority); Roach v. Loxahatchee GrovesWater Control District, 417 So. 2d 814 (Fla. 4th DCA 1982).And see Ops. Att'y Gen. Fla. 89-34 (1989), 96-66 (1996), 98-20 (1998), and 04-26 (2004).
[8] Halifax Drainage District of Volusia County v. State, supra;State ex rel. Greenberg v. Florida State Board of Dentistry,297 So. 2d 628 (Fla. 1st DCA 1974), cert. dismissed,300 So. 2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities,Inc., of Florida, 281 So. 2d 493 (Fla. 1973). Andsee, e.g., Ops. Att'y Gen. Fla. 02-30 (2002) and 04-48 (2004).
[9] Section 298.005(3), Fla. Stat. And see Roach v. LoxahatcheeGroves Water Control District, supra, stating that the Legislature, in providing for the organization of water control districts (then commonly known as drainage districts) by the enactment of a general law, now codified as Ch. 298, Fla. Stat., conferred certain limited powers on these statutory entities for the purpose of reclaiming and draining swamps and overflowed lands.
[10] See s. 3 of Ch. 2005-342, Laws of Fla., reenacting s. 10 of the Spring Lake Improvement District's charter.And see ss. 15 and 16 of the charter providing for the adoption of a water control plan.
[11] See, e.g., ss. 10(17) (maintenance of roads), 10(22) (operation and maintenance of parks and facilities for indoor and outdoor recreation, cultural, and educational uses), and 10(24) (streetlights) of the district's charter. Andsee s. 10(25) and (26) of the district charter, respectively authorizing the district to require underground utilities and to require landowners within the district to maintain their respective properties "in a neat and attractive condition."
[12] Book 13, page 125. You have also enclosed a letter from the Clerk of Courts, Highlands County, stating that no additional information regarding this motion was located. See Letter to Joseph DeCerbo, District Manager, from Pamela Nava, Deputy Clerk, dated January 10, 2011.
[13] Section 388.031, Fla. Stat. 1979, was repealed by s. 12, Ch. 80-281, Laws of Fla.
[14] These procedures for creating a mosquito control district were also repealed by Ch. 80-281, Laws of Fla.
[15] As noted supra, special districts possess only such powers as are expressly granted by statute or necessarily implied therefrom. See n. 7, supra. Cf.
Ops. 97-57 (1997), 93-05 (1993), 90-27 (1990), 81-55 (1981), 81-7 (1981), and 74-121 (1974) (county has no authority to amend or alter the provisions of a special act passed by the state Legislature). I note that s. 2, Ch. 2005-342, Laws of Fla., in ratifying and approving the creation of the district in 2005, provides in part that "[a]ll lawful debts, bonds, obligations, contracts, franchises, promissory notes, audits, minutes, resolutions, and other undertakings of the Spring Lake Drainage District are hereby validated and shall continue to be valid and binding on the Spring Lake Improvement District in accordance with their respective terms, conditions, covenants, and tenor." This language, which is identical to that contained in the district's original enabling legislation, Ch. 71-669, Laws of Fla., appears to be a ratification of actions taken when the district was the Spring Lake Drainage District.
[16] See s. 1, Ch. 10-266, Laws of Fla., amending and renumbering s. 10 of the charter as s. 8 and providing in paragraph (1)(o) that the district has the power "[t]o construct and maintain facilities for and take measures to control mosquitoes and other arthropods of public health importance."
[17] See s. 4, Ch. 10-266, supra, stating that the "act shall take effect only upon its approval by a majority vote of those qualified electors of the district voting in a referendum conducted in accordance with the provisions of law relating to elections currently in force, except that this section and section 3 shall take effect upon this act becoming a law."
[18] See http://www.votehighlands.com/ for the results of the 2010 general election, including the referendum on the proposed amendment to the district charter.