Dear Mr. Senft:
On behalf of the governing board of the Southwest Florida Water Management District, you have requested my opinion concerning the application of sections 255.20 and 287.055, Florida Statutes (section 287.055 is known as the CCNA or the Consultants Competitive Negotiation Act), to the procurement of construction and construction management services. Your question is substantially as follows:
Whether the Southwest Florida Water Management District may lawfully use a "hybrid" process to award construction projects, including construction and construction management services, when that process combines a request for bids or proposals with competitive negotiation such that the lowest or best responsive bidder is selected and then competitive negotiations are begun in an effort to arrive at a final project or service cost?
In sum:
The Southwest Florida Water Management District is limited to utilizing the procedures set forth in the statutes for public construction works and for construction management services. The district has no authority to develop a "hybrid" model for awarding construction projects in the absence of statutory authority.
The Southwest Florida Water Management District was created by section 373.069(1)(d), Florida Statutes, as an independent special district[1] controlled by a governing board of 13 members.[2] Your letter advises that the governing board of the district has been reviewing the process the district uses to procure construction projects and construction management services. The district is considering adopting a policy which would combine sealed bids (or requests for proposals) and competitive negotiations in a process that would allow selection of the lowest responsive bidder and then authorize competitive negotiations to arrive at a final project or service cost.[3] Your attorney has opined that the statutes governing procurement methods for construction projects and construction management services (sections 255.20 and 287.055, Florida Statutes), while containing provisions which would provide some flexibility in the process, would not allow competitive negotiations to be combined with another method of procurement such as requests for sealed bids. I concur in that conclusion.
It is the general rule with regard to competitive bidding by public agencies that, in the absence of any legislative requirements regarding the method of awarding public contracts, public officers may exercise reasonable discretion, and a contract may be made by any practicable method that will safeguard the public interest.[4]
The statutory directives requiring special districts to competitively award contracts for public construction projects are contained in sections 255.20 and 287.055, Florida Statutes.
Section 255.20(1), Florida Statutes, provides that:
"A . . . special district as defined in chapter 189, [5] or other political subdivision[6] of the state seeking to construct or improve a public building, structure, or other public construction works must competitively award to an appropriately licensed contractor each project that is estimated in accordance with generally accepted cost-accounting principles to cost more than $300,000.[7]. . . . As used in this section, the term `competitively award' means to award contracts based on the submission of sealed bids, proposals submitted in response to a request for proposal, proposals submitted in response to a request for qualifications, or proposals submitted for competitive negotiation. This subsection expressly allows contracts for construction management services, design/build contracts, continuation contracts based on unit prices, and any other contract arrangement with a private sector contractor permitted by any applicable municipal or county ordinance, by district resolution, or by state law. For purposes of this section, cost includes the cost of all labor, except inmate labor, and the cost of equipment and materials to be used in the construction of the project. Subject to the provisions of subsection (3), [8] the county, municipality, special district, or other political subdivision may establish, by municipal or county ordinance or special district resolution, procedures for conducting the bidding process."
Section 255.20(1)(d), Florida Statutes, provides further direction:
"If the project:
1. Is to be awarded based on price, the contract must be awarded to the lowest qualified and responsive bidder in accordance with the applicable county or municipal ordinance or district resolution and in accordance with the applicable contract documents. The county, municipality, or special district may reserve the right to reject all bids and to rebid the project, or elect not to proceed with the project. This subsection is not intended to restrict the rights of any local government to reject the low bid of a nonqualified or nonresponsive bidder and to award the contract to any other qualified and responsive bidder in accordance with the standards and procedures of any applicable county or municipal ordinance or any resolution of a special district.
2. Uses a request for proposal or a request for qualifications, the request must be publicly advertised and the contract must be awarded in accordance with the applicable local ordinances.
3. Is subject to competitive negotiations, the contract must be awarded in accordance with s. 287.055."
The statute requires that a special district "must" competitively award these contracts. The word "must" generally does not allow for any choice when used in a statute and denotes compulsion, obligation, or requirement.[9] The general rule is that where language is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction.[10] Where the statutory language is plain, definite in meaning without ambiguity, it fixes the legislative intention and interpretation and construction are not needed.[11] Thus, the Southwest Florida Water Management District is required by statute to competitively award such contracts pursuant to the terms of section 255.20, Florida Statutes.
The statute contains flexibility within its terms regarding the type of procedure to be used in competitively awarding such contracts, that is, the definition of "competitively award" contains several options. In addition, section 255.20, Florida Statutes, authorizes a special district to establish procedures for conducting the bidding process, but the district is limited to using the competitive award process outlined in section 255.20, Florida Statutes, for construction works. The power of a special district to adopt such resolutions is limited by the nature of special districts to those powers and duties set forth by the Legislature in the enabling legislation of the district and the statutes.[12]
The Legislature has directed that these procedures are to be used separately and distinctly based on the type of negotiations involved in bidding the project: competitive negotiations, requests for proposal or requests for qualifications, or lowest qualified and responsive bidder. Except to the extent authorized by the statute itself, each of these distinct procedures for selecting a contractor for public construction works should be utilized to secure bids for the particular types of projects to be awarded, that is, contracts for professional services as described in section 287.055, Florida Statutes, are subject to competitive negotiations, while construction contracts for public works must be competitively awarded.
With regard to the selection of construction management or program management entities to provide services to a special district, section 255.103, Florida Statutes, states that
"A governmental entity[13] may select a construction management entity, pursuant to the process provided by s. 287.055, which is to be responsible for construction project scheduling and coordination in both preconstruction and construction phases and generally responsible for the successful, timely, and economical completion of the construction project. The construction management entity must consist of or contract with licensed or registered professionals for the specific fields or areas of construction to be performed, as required by law. The construction management entity may retain necessary design professionals selected under the process provided in s. 287.055. At the option of the governmental entity, the construction management entity, after having been selected and after competitive negotiations, may be required to offer a guaranteed maximum price and a guaranteed completion date or a lump-sum price and a guaranteed completion date, in which case, the construction management entity must secure an appropriate surety bond pursuant to s. 255.05 and must hold construction subcontracts. If a project, as defined in s. 287.055(2)(f), solicited by a governmental entity under the process provided in s. 287.055 includes a grouping of substantially similar construction, rehabilitation, or renovation activities as permitted under s. 287.055(2)(f), the governmental entity, after competitive negotiations, may require the construction management entity to provide for a separate guaranteed maximum price or a separate lump-sum price and a separate guaranteed completion date for each grouping of substantially similar construction, rehabilitation, or renovation activities included within the project."
The statute also recognizes that "[t]his section does not prohibit a local government from procuring construction management services, including the services of a program management entity, pursuant to the requirements of s. 255.20."
Sections 255.103, 255.20, and 287.055, Florida Statutes, must be read to work together to provide direction relating to the particular type of construction related service being bid. While these statutes provide flexibility within their terms as to procedures for conducting the bidding process, the district has no authority to develop a process for awarding public construction works outside the statutory direction of section 255.20, Florida Statutes, in the absence of any other statutory authority. It is the rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[14]
As a statutorily created entity, the Southwest Florida Water Management District has only such power as is expressly or by necessary implication granted by the legislative enactment creating the district.[15] Unlike counties or municipalities which have been granted home rule powers, special districts possess no inherent or home rule powers. Created by statute for a specific, limited purpose, the Southwest Florida Water Management District may exercise only such power and authority as it has been granted by law.[16] Thus, the district is limited to utilizing the procedures outlined by the Legislature for public construction works in section 255.20, Florida Statutes, and to section 287.055, Florida Statutes, when proposing to acquire professional services. Section 255.103, Florida Statutes, contemplates the use of section 255.20 or 287.055, Florida Statutes, to select a construction management firm. While sections 255.20 and 255.103, Florida Statutes, both contemplate the use of the CCNA for certain construction projects, the statutory direction as to how the CCNA must be used in these circumstances would preclude the district from developing a hybrid model distinct from the statutory models.
Thus, it is my opinion that the Southwest Florida Water Management District has no authority to develop a "hybrid" model for awarding construction projects in the absence of statutory authority.
Sincerely,
Pam Bondi Attorney General
PB/tgh
[1] See Florida Department of Community Affairs, Official List of Special Districts Online, Southwest Florida Water Management District.
[2] Section 373.073(1)(a), Fla. Stat.
[3] This opinion is expressly limited to a consideration of your authority as a special district to develop a bidding process involving the procedures you have described in your opinion request. While you have provided this office with a copy of an article from a business publication discussing a bidding procedure utilized by another governmental entity, nothing in this opinion should be understood to address or comment on the bidding process utilized by another agency.
[4] See, e.g., Volume Services Division of Interstate UnitedCorporation v. Canteen Corporation,369 So. 2d 391 (Fla. 2d DCA 1979) (in the absence of specific constitutional or statutory requirements, a public agency has no obligation to establish a bidding procedure and may contract in any manner not arbitrary or capricious), and see Ops. Att'y Gen. Fla. 96-28 (1996), 93-28 (1993), and 93-83 (1993) and the cases cited therein.
[5] Section 189.403(1), Fla. Stat., defines "[s]pecial district" as "a local unit of special purpose, as opposed to general-purpose, government within a limited boundary, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. The special purpose or purposes of special districts are implemented by specialized functions and related prescribed powers. For the purpose of s. 196.199(1), special districts shall be treated as municipalities. The term does not include a school district, a community college district, a special improvement district created pursuant to s. 285.17, a municipal service taxing or benefit unit as specified in s. 125.01, or a board which provides electrical service and which is a political subdivision of a municipality or is part of a municipality."
The Southwest Florida Water Management District would fall within the scope of this definition.
[6] A "political subdivision" is defined in section 1.01(8), Fla. Stat., as follows: "The words `public body,' `body politic,' or `political subdivision' include counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts, and all other districts in this state."
[7] As you have cited specifically to section 255.20, Fla. Stat., in your letter I assume that the projects proposed to be awarded are within the financial amounts described in the statute.
[8] Section 255.20(3), Fla. Stat., requires the use of Florida forest products and timber for construction projects if such products are available and their price, fitness, and quality "are equal."
[9] See Mallory v. Harkness,895 F.Supp. 1556 (S.D. Fla. 1995); Op. Att'y Gen. Fla. 07-42 (2007).
[10] Fine v. Moran, 77 So. 533, 536 (Fla. 1917);M.W. v. Davis, 756 So. 2d 90 (Fla. 2000).
[11] McLaughlin v. State, 721 So. 2d 1170 (Fla. 1998);Osborne v. Simpson, 114 So. 543 (Fla. 1927); Ops. Att'y Gen. Fla. 00-46 (2000) (where language of statute is plain and definite in meaning without ambiguity, it fixes the legislative intention such that interpretation and construction are not needed); 99-44 (1999); and 97-81 (1997).
[12] See State ex rel. Vans Agnew v. Johnson,150 So. 111 (Fla. 1933), for the proposition that the powers of a water control district are restricted to those deemed essential by the Legislature to effect its purpose; State ex rel. Davis v.Jumper Creek Drainage District, 14 So. 2d 900 (Fla. 1943),affirmed, 21 So. 2d 459 (Fla. 1945); Rabin v. Lake WorthDrainage District, 82 So. 2d 353 (Fla. 1955), cert.denied, 350 U.S. 958 (1956); Roach v. Loxahatchee Groves WaterControl District, 417 So. 2d 814 (Fla. 4th DCA 1982),affirmed, 421 So. 2d 49 (Fla. 4th DCA 1982), indicating that a water control district has only those powers which the Legislature has delegated to it by statute. Cf. Ops. Att'y Gen. Fla. 04-48 (2004) (as entity created pursuant to legislative act, water control districts may only exercise such powers as have been expressly granted by that act or must necessarily be exercised in order to carry out an express power); and 83-44 (1983).
[13] See s. 255.103(1), Fla. Stat., defining "governmental entity" to include special districts as defined in Ch. 189, Fla. Stat., or political subdivisions of the statute.
[14] Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952);Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976). In this regard you have cited Attorney General Opinion 96-28, in which this office concluded that the provisions of s. 255.20, Fla. Stat., should be read together with the minimum procedures for letting contracts for works and improvements by drainage and water control districts set forth in s. 298.35, Fla. Stat. However, s. 298.35, Fla. Stat., was repealed in 1997 and no provision of Ch. 373, Fla. Stat., establishes bidding requirements for the Southwest Florida Water Management District.
[15] See Lee v. Division of Florida Land Sales andCondominiums, 474 So. 2d 282 (Fla. 5th DCA 1985); Ops. Att'y Gen. Fla. 09-40 (2009) and 91-93 (1991).
[16] Cf. Op. Att'y Gen. Fla. 90-63 (1990). And see ForbesPioneer Boat Line v. Board of Commissioners of Everglades DrainageDistrict, 82 So. 346 (Fla. 1919).